FRANK, Judge.
The appellants attack the order granting the appellee’s motion for a new trial. The trial court found two of the four grounds urged by the appellee in support of a new trial meritorious. In spite of the generally followed view that “[f]ew decisions of a lower court are granted greater deference in our judicial system than a trial court’s order granting a new trial,” McNair v. Davis, 518 So.2d 416 (Fla. 2d DCA 1988), we reverse based upon our assessment of the record and the factors relied upon by the trial court for its action.
During the voir dire examination of the prospective jurors in this third party action originating in an industrial accident, counsel for the appellant Highland City Glass Co., Inc., asked, “Have any of you ever *927 been injured on the job and brought a worker’s compensation claim?” There was no response to that question and it was then asked, “What about family members?” The appellee’s attorney immediately sought but was denied a mistrial; the trial court advised Highland’s attorney not to “go into it anymore.” The record discloses that the admonition was heeded. We find two defects in that aspect of the trial court’s order granting a new trial because of the reference to a “worker’s compensation claim.”
I.
First, the trial court’s dispositive reliance upon Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963); Kreitz v. Thomas, 422 So.2d 1051 (Fla. 4th DCA 1982); and Cook v. Eney, 277 So.2d 848 (Fla. 3d DCA), cert. denied, 285 So.2d 414 (Fla.1973), is misplaced. In each of those cases, in contrast to the one at hand, there was evidence adduced at trial disclosing to the jury that the plaintiff/claimant had received benefits from various sources thus generating the risk that the jury could perceive the plaintiff/claimant as having been compensated for the injury he sustained. The evidence in Eichel revealed that the plaintiff was receiving disability pension benefits pursuant to the Railroad Retirement Act. The trial court in Kreitz permitted the introduction of statements evidencing the payment of worker’s compensation benefits. In Cook, the evidence found prejudicial stemmed from the cross-examination of the plaintiff indicating that he had received worker’s compensation and social security benefits. In short, we find a vastly significant difference between the single comment in the voir dire to “workers compensation claims” and the tendering of evidence showing the payment or receipt of benefits. In granting the motion for new trial, the trial court ascribed a higher degree of impact or effect to the question than can reasonably be said to have occurred. Even assuming that the jurors treated the question as suggesting that the appellee had filed a worker’s compensation claim, there was nothing said to indicate that the appellee had been compensated for the injuries he experienced.
The further consideration persuading us to reverse the trial court, even when we accord it the outer limits of discretion in determining to grant a new trial, derives from the following portion of its order:
Given that the issues in this cause were close and given the circumstances surrounding the trial, verdict and the lengthy (approximately five (5) hours) and unduly heated nature of the jury deliberations (necessitating an instruction by the Court as to the loudness, after three (3) hours, of same), this Court finds and concludes that Defendant’s remark to the jury concerning workmen’s compensation benefits may have very likely influenced the jury against the Plaintiff at the very start of the trial. As such, the remark and subsequent denial of Plaintiff’s Motion for Mistrial constituted in and of itself prejudicial error necessitating a new trial.
The isolated event, attributing to it all of the evil asserted by the appellee, occurred at the very onset of the trial proceedings and not at a point proximate to the jury’s deliberations. Cf. Tampa Sand and Material Company, Inc. v. Johnson, 103 So.2d 250 (Fla. 2d DCA 1958) (trial court’s response to a juror’s question during the jury charge included reference to workmen’s compensation insurance). Thus, we have serious difficulty with and reject the trial court’s conjecture that the voir dire “concerning worker’s compensation benefits may have very likely influenced the jury against the plaintiff at the very start of the trial.” The challenged examination, as we have noted, did not include use of the word “benefit” or “benefits,” cf. Sosa v. Knight-Ridder Newspapers, 435 So.2d 821 (Fla.1983) (new trial was warranted in light of comment in closing argument to workers’ compensation benefits), and the cleansing effect of some five days between the voir dire of the jurors and the jury’s deliberations cannot be ignored. The trial court’s linkage of the “lengthy” and “unduly heated nature of the jury deliberations” to the disputed voir dire is wholly speculative and *928 emerges as little more than a gloss designed to induce appellate acceptance of the trial court's customary preeminence in a matter of this kind.
II.
The trial court’s second asserted reason for ordering a new trial is patently erroneous. Simon Bol, referred to as Sam in the record, a vice president and general manager of the appellant Tampa Tractor, the supplier of the front-end loader purchased by Royster and operated by the appellee at the time he was injured, testified to his managerial duties, educational background, the various types of equipment vended by Tampa Tractor, the purposes to which such equipment can be put, and finally:
Q. Sam, this unit that we’re talking about, it was your company that sold it to Royster. Correct?
A. Yes sir.
Q. And where it was — when it was first presented to Royster, what did, as you recall, what did Royster ask for?
MR. FROST: Your Honor, I’m going to object. I think the testimony, there’s been no proper predicate laid. He was not involved in that sale as we understand from his deposition.
MR. SCHOTT: The vice-president and general manager of whole operations, You (sic) Honor. He can testify to what he knows as to the sale itself for sure.
MR. FROST: It’s hearsay—
MR. SCHOTT: Your Honor, that’s not hearsay. He’s the man that knows all about what was done. He’s probably got documents if we want to get into who signed the documents, etc., indicating who asked for what requested. He’s the man.
THE COURT: If he knows of his own knowledge.
MR. FROST: Okay. If he had contact with Royster is the predicate that’s got to be laid. Then if he asks what Royster said, then that’s hearsay.
MR. SCHOTT: Well, Your Honor, I can tell you he didn’t go over to Royster if that’s what he’s saying. But he had personnel under his supervision for the corporate unit, which is what we have here. And he has sales meetings with them, I know that. And he knows what they ordered.
MR. FROST: Then that’s pure hearsay. If what somebody tells him, because he’s the manager, comes up and tells him what Royster said, it's two degrees of hearsay. And the point is I think he can tell if he knows what was ordered, but he can’t, say what Royster said about the order nor what anyone—
THE COURT: If he knows what was ordered and if he helped place the order.
MR. SCOTT: Thank you, Your Honor.
Q. Do you know who at Royster placed the order?
A. I know of it after the fact. I didn’t know it at the time. But F.A. McKenzie did.
MR. FROST: That’s the objection for the hearsay, Your Honor, is that he’s got to know at the time.
MR. SCHOTT: Your Honor, he can know as part of the — vice-president of the corporation, if he knows that it was Mr. McKenzie that ordered. He wasn’t there with him but he knows he placed the order; he’s got signed documents with him.
THE COURT: I think he can go ahead and ask.
MR. SCHOTT: Thank you, Your Hon- or.
Q. Mr. McKenzie placed the order. What specifically did he order?
A. As I recall he odered (sic) a two-yard front-end loader, specifically the 544B which fits that particular qualification. And a very, very specific specifications on exactly what they wanted.
A. What did he ask for?
MR. FROST: Your Honor, so I don’t have to keep jumping up, can I have a continuing objection along these lines because it is hearsay?
MR. SCHOTT: Fine.
Q. What did your company sell to them?
*929 A. We sold them a John Deere 544B loader with a (sic) enclosed, glass-enclosed cab.
The trial court correctly overruled the objection; Bol’s testimony was not infected with hearsay. Tampa Tractor’s attorney was seeking to procure testimony from Bol not as to an out of court statement that someone had related to him, but rather, the specific equipment Royster acquired from Tampa Tractor. The fact that the source of Bol’s knowledge was the Tampa Tractor’s salesman who handled the purchase by Royster did not disqualify Bol’s testimony as to the identity of the equipment. Certainly Bol, in his general managerial position was qualified to provide that testimony, if, as the trial court properly noted, it was based upon personal knowledge. On the other hand, if Bol’s understanding of the transaction appeared inaccurate or inadequate following cross examination, a challenge grounded upon section 90.604, Florida Statutes (1985), would have been appropriate but not a hearsay objection. In any event, the evidence of Bol’s status with Tampa Tractor, “together with the evidence of his experience and other credentials, was an adequate foundation for the testimony that followed.” Howard Brothers v. Sotuyo, 472 So.2d 1264, 1265 (Fla. 1st DCA 1985).
In the face of the trial court’s proper rejection of the hearsay objection when it was lodged, we find absolutely no warrant for its comment in the order granting a new trial “that allowing over objection of the hearsay testimony of Mr. Bol in and of itself constituted prejudicial error.” Moreover, even if we were to agree with the trial court’s ultimate view of Bol’s testimony, it is manifest beyond peradventure that that portion inspiring the hearsay objection was of minimal, if any, significance in the jury's assessment of liability. It was conceded in the pretrial stipulation that Tampa Tractor furnished Royster with the front end loader in which the appellee was injured and the origin or quality of Bol’s knowledge as to how the equipment came into Royster’s possession had no discernible relevance to any question associated with Tampa Tractor’s responsibility to the appellee.
Based upon the foregoing, we vacate the order granting a new trial and remand for the entry of a judgment and such other relief as is appropriate in favor of the appellants.
RYDER, A.C.J., and HALL, J., concur.