715 So.2d 1094 (1998)
Robert E. PATE and Honoly Pate, his wife, Appellants,
v.
Michael David RENFROE, II, Appellee.
No. 97-2281.
District Court of Appeal of Florida, First District.
August 13, 1998.
*1095 Stephen J. Pajcic, III, and Christine A. Clark of Pajcic & Pajcic, P.A., Jacksonville, for Appellants.
Donald E. Pinaud, Jr., and J. Stephen O'Hara, Jr., of O'Hara, Spradley, Byrd, Jenson, Waters & McCall, Jacksonville, for Appellee.
DAVIS, Judge.
Robert E. Pate, the plaintiff below in a personal injury action arising out of an automobile accident, appeals a final judgment in favor of defendant Michael David Renfroe. The five issues raised on appeal are: (1) whether comments in defense counsel's closing argument, to which no objections were made, constituted fundamental error justifying reversal for a new trial; (2) whether the trial court abused its discretion in denying Pate's motion for new trial or additur because, Pate asserts, the jury's verdict that he suffered no permanent injury causally connected to the automobile accident was against the manifest weight of the evidence; (3) whether the trial court erred in giving a jury instruction requested by defendant which was based upon section 316.122, Florida Statutes (1995); (4) whether the trial court abused its discretion in denying Pate's motion for new trial or additur because, Pate asserts, the jury's verdict that he was fifteen percent comparatively negligent was against the manifest weight of the evidence; and (5) whether the trial court erred in reducing the jury verdict in favor of Pate by $10,000 as a set-off for PIP benefits. We affirm on the first four issues, but we reverse the set-off *1096 for PIP because no such benefits have been paid or are payable as required by the set-off statute.
The automobile accident occurred on March 1, 1995, when Renfroe ran a red light, striking Pate's vehicle. Pate was making a left turn on a green arrow. The impact caused Pate's vehicle to turn on its side and spin around 360 degrees. Pate's right knee struck the ignition key with force. Pate filed a complaint alleging that Renfroe was negligent and that Pate had suffered permanent injuries as a result of the accident which had caused him to incur medical expenses, lost wages, lost earning capacity, loss of enjoyment of life, pain and suffering. By the date of the verdict, as a result of this accident, Pate had received workers' compensation benefits for lost wages in the amount of approximately $29,000 and medical expenses in the amount of $11,391.29. Pate has neither claimed nor received any PIP benefits. Renfroe's answer asserted numerous affirmative defenses, including a defense that Pate's negligence caused or contributed to the accident.
Prior to trial Renfroe made two offers of judgment to Pate in the amount of $25,000, the limit of Renfroe's insurance policy. Pate rejected both offers. The jury ultimately returned a verdict finding that Pate had suffered damages for lost wages and past medical bills in the amount of $20,000, but also found Pate fifteen percent comparatively negligent. The jury found that Pate had suffered no permanent injury as a result of this accident and no future damages were awarded. Reducing the jury's damage award of $20,000 by fifteen percent to account for Pate's comparative negligence, the verdict in favor of Pate was $17,000. The trial court relied upon the verdict of $17,000 in determining that the verdict was more than twenty-five percent less than the offers of judgment, making Pate liable for Renfroe's costs and attorney's fees pursuant to section 768.79, Florida Statutes (1995). Renfroe filed a motion for sanctions pursuant to section 768.79, and a separate motion for a PIP set-off, asking the court to reduce the jury verdict in favor of Pate by $10,000, the amount of Pate's PIP coverage. The trial court determined that Pate was liable for fees and costs under the offer of judgment statute and granted Renfroe's motion for a $10,000 set-off for PIP benefits pursuant to section 627.736, Florida Statutes (1995). The trial court then reduced Pate's verdict to $7000 to account for the PIP set-off, and then set off that amount against Renfroe's costs and fees of $48,695.20, resulting in a judgment for Renfroe in the amount of $41,695.20.
We find no merit to Pate's argument that the four isolated comments made by defense counsel during closing argument constitute fundamental error. Pate's counsel failed to object below to any of these remarks. We remind counsel that, "[i]f counsel intend to appeal to this court, they would be well advised to object." Winterberg v. Johnson, 692 So.2d 254, 255 (Fla. 1st DCA 1997)(quoting Donahue v. FPA Corp., 677 So.2d 882, 884 (Fla. 4th DCA 1996)(Klein, J., concurring specially)).
Pate contends that the trial court abused its discretion in denying his motion for new trial or additur because the jury's findings that Pate suffered no permanent injury causally related to the accident and that Pate was fifteen percent comparatively negligent were against the manifest weight of the evidence. Viewing the evidence in the light most favorable to the verdict, we conclude that the trial court did not abuse its discretion in denying the motion for new trial or additur. See Allstate Insurance Co. v. Manasse, 707 So.2d 1110 (Fla.1998).
Sufficient evidence was presented from which the jury could reasonably find that Pate did not suffer a permanent injury as a result of the motor vehicle accident of March 1, 1995. The medical testimony established that Pate is suffering from chondromalacia, possibly bilaterally, and also had a meniscal tear in his right knee. Chondromalacia is a disintegration of the covering of the bones making up the knee joint. Pate's chondromalacia is at Grade 3, one grade away from requiring a total knee replacement. In addition to the testimony that Pate appears to have chondromalacia in both the knee which was injured in the crash and his other knee, there was testimony that it is a *1097 progressive disease that had to have pre-existed the accident based on the severity of his current condition. There was also testimony that the natural progression of chondromalacia causes meniscal tears and that it was more likely that the meniscal tear Pate suffered was caused by the chondromalacia than the accident. The record contains evidence from which the jury reasonably could have concluded that Pate's current knee condition was a result of a pre-existing disease rather than the accident. See Katz v. Ghodsi, 682 So.2d 586 (Fla. 3d DCA 1996), review denied mem., 690 So.2d 1299 (Fla.1997). Therefore, the trial court did not abuse its discretion in denying Pate's motion for new trial or additur.
Pate also contends that the trial court abused its discretion in denying his motion for new trial or additur because it was against the manifest weight of the evidence for the jury to find him fifteen percent comparatively negligent, and that the trial court induced this error by incorrectly instructing the jury. The trial court instructed the jury, based upon section 316.122, Florida Statutes (1995), that a motorist must "yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."
Pate failed to preserve for review the argument he now presents. See Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982)("in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below"). The record supports appellee's contention that Pate abandoned his objection to the jury instruction. Moreover, the substance of Pate's objection to this jury instruction was that the facts did not support giving the instruction because there was no evidence that Renfroe had entered the intersection when Pate made his turn. Pate did not present to the trial court the argument he makes now, i.e., that it was an error of law to give the instruction because only section 316.075(1)(b), which expressly applies to a motorist turning left under a green arrow, should provide the standard for Pate's conduct. Indeed, though arguing to this court that the correct standard for judging whether Pate's conduct was negligent is contained in section 316.075(1)(b), Pate did not request any jury instruction based on that statute. "[I]t is axiomatic that it is the function of the appellate court to review errors allegedly committed by trial courts, not to entertain for the first time on appeal issues which the complaining party could have, and should have, but did not, present to the trial court." Abrams v. Paul, 453 So.2d 826, 827 (Fla. 1st DCA 1984).
We reject Pate's argument that the trial court abused its discretion in denying a new trial or additur, which Pate sought on the ground that the jury finding that Pate was fifteen percent comparatively negligent was against the manifest weight of the evidence. The evidence supported the conclusion that Pate was negligent in violating his duty to yield to a car which was hazardously close to the intersection. An eyewitness testified to having seen Renfroe's car rapidly approaching the intersection, at a speed between 45 and 55 miles per hour. She testified that it was her judgment that the vehicle would be unable to stop at the intersection. She saw the speeding car `hit the brakes' about one car length away from entering the intersection. The jury could have concluded based on the testimony of that eyewitness that Renfroe's vehicle was so close to the intersection when Pate made his left turn that Renfroe posed an immediate hazard. The trial court did not abuse its discretion in denying the motion for new trial or additur because there was evidence from which the jury could reasonably have found Pate to have been comparatively negligent. See generally Allstate Insurance Co. v. Manasse, supra.
Having found no error requiring a new trial on the basis of the closing arguments or the jury instructions, and no abuse of discretion in the trial court's decision not to order a new trial on damages or to alter the jury's verdict in favor of Pate in the amount of $17,000 ($20,000 in damages reduced by $3000 for Pate's comparative negligence), we turn to the final issue. That issue is whether the trial court erred in granting Renfroe's motion for a $10,000 PIP set-off pursuant to *1098 section 627.736. The trial court reduced the verdict for plaintiff to $7000 and entered judgment for defendant in the amount of $41,695.20.
Pate does not dispute that Renfroe was entitled to recover attorney's fees and costs under section 768.79, Florida Statutes (1995), because the verdict was more than twenty-five percent less than the offers of judgment Pate rejected. Nor does Pate take issue with the trial court's finding that Renfroe incurred $48,695.20 in taxable costs and reasonable attorneys' fees after the first offer of judgment. Pate, however, disputes the trial court's decision to grant Renfroe's motion for the PIP set-off, arguing that no PIP set-off was proper because no PIP benefits have been paid or are payable to him as a result of this accident. The set-off statute states:
An injured party who is entitled to bring suit under the provisions of ss. 627.730-627.7405, or his legal representative, shall have no right to recover any damages for which personal injury protection benefits are paid or payable. The plaintiff may prove all of his special damages notwithstanding this limitation, but if special damages are introduced in evidence, the trier of facts, whether judge or jury, shall not award damages for personal injury protection benefits paid or payable. In all cases in which a jury is required to fix damages, the court shall instruct the jury that the plaintiff shall not recover such special damages for personal injury protection benefits paid or payable.

Section 627.736(3), Florida Statutes (1995) (emphasis added).
It is undisputed that PIP benefits have never been paid to Pate by his PIP insurer because his medical bills and past lost wages have been paid by workers' compensation insurance.[1] The trial court ruled that PIP benefits were "payable" on two alternative theories. First, the trial court held that "plaintiffs could be entitled to recover PIP benefits to the extent of any repayment of the workers' compensation carrier from the proceeds of any settlement or judgment in plaintiff's favor." Second, the trial court ruled the set-off was justified by the possibility that Pate may yet become eligible for PIP benefits as a result of this accident for future economic losses and medical bills, if, for example, he becomes ineligible for workers' compensation.
The court's rationale for permitting the set-off based upon a hypothetical possibility of repayment of workers' compensation benefits received for past losses does not withstand close scrutiny. The court recognized that repayment of the workers' compensation carrier is "unlikely." We conclude that, under the facts of this case, such a repayment to the workers' compensation carrier out of the jury's verdict in favor of Pate is impossible, as (due to the operation of the offer of judgment statute) the final judgment was for $41,000 in favor of Renfroe and against Pate. Although the workers' compensation benefits previously received by Pate may indeed have compensated him for the same losses for which he could otherwise have sought PIP, no PIP benefits are payable for those past losses under the facts of the present case. The final judgment against Pate provides no funds with which the workers' compensation carrier could be repaid. See Comeau v. Safeco Ins. Co., 356 So.2d 790, 794 (Fla.1978); Davis v. Travelers Indemnity Co., 356 So.2d 794 (Fla.1978); Kovarnik v. Royal Globe Ins. Co., 363 So.2d 166 (Fla. 4th DCA 1978).
The trial judge further reasoned that, if not for the impact in this case of the offer of judgment statute, Pate would have recovered a positive verdict, from which he would have satisfied the lien of the workers' compensation carrier, thus making him eligible for PIP benefits for the past medical bills and lost wages encompassed by the jury's verdict. See, e.g., Atlanta Casualty Co. v. Yadevia, 579 So.2d 213 (Fla. 2d DCA 1991) (plaintiff *1099 whose medical expenses had been paid by workers' compensation was entitled to PIP benefits for medical expenses only to the extent she would not receive a double payment); Fortune Ins. Co. v. McGhee, 571 So.2d 546 (Fla. 2d DCA 1990) (plaintiff entitled to PIP benefits only to the extent that satisfaction of workers' compensation lien depleted the amount of the third party settlement, to avoid overcompensation of the insured). The trial court held that application of the PIP set-off was required because Renfroe's entitlement to the set-off should not be affected by his having made a successful offer of judgment. That rationale fails to account for the fact that it was Renfroe's burden to establish entitlement to a set-off based upon an actual duplication of benefits.
Notwithstanding the sound public policy in favor of the offer of judgment statute, it is indisputable that the PIP set-off provision only comes into play when benefits have been "paid" or are "payable." It is not enough to say that PIP would have been payable after repayment of workers' compensation benefits previously received, but for the operation of the offer of judgment statute, which so reduced the verdict that the plaintiff is unable to repay workers' compensation. "The cardinal rule of statutory construction is that the courts will give a statute its plain and ordinary meaning." Weber v. Dobbins, 616 So.2d 956, 958 (Fla.1993). The plain ordinary meaning of words may be ascertained by reference to a dictionary. Green v. State, 604 So.2d 471, 473 (Fla.1992). "Payable" means "requiring payment on a certain date; due." The American Heritage College Dictionary 1004 (3d ed. 1993) (emphasis added). The court's analysis that PIP benefits "would have been payable" under different circumstances, i.e., if there had been no offer of judgment, does not satisfy the clear language of the PIP set-off provision that the benefits have been "paid" or are "payable."
The purpose of a set-off is to avoid duplication of benefits. See, e.g., Galante v. USAA Cas. Ins. Co., 695 So.2d 456 (Fla. 4th DCA 1997); Allstate Ins. Co. v. Piatt, 417 So.2d 705 (Fla. 3d DCA 1982). It is the burden of the party seeking the set-off to prove the existence of an actual duplication of benefits in fact. Galante, 695 So.2d at 457. In Allstate Insurance Co. v. Piatt, the court held that there had been no demonstration of duplication of benefits and therefore the trial court had not erred in denying a PIP set-off. 417 So.2d at 706. Contrary to the trial court's alternative ground for the set-off, under the facts of the present case, Renfroe will not be entitled to a set-off against PIP benefits which might become payable in the future. This jury found no permanent injury and awarded no future damages. Thus, there can be no duplication of benefits between the jury verdict against Renfroe (for Pate's past lost wages and past medical expenses) and any future PIP payment to Pate for future wage losses and medical bills.
This case differs from both Pizzarelli v. Rollins, 704 So.2d 630 (Fla. 4th DCA 1997), review granted, 23 Fla. L. Weekly Issue 25B, p. i (Fla. June 19, 1998), and Kokotis v. DeMarco, 679 So.2d 296 (Fla. 5th DCA 1996), review denied mem., 689 So.2d 1068 (Fla. 1997). In Pizzarelli the court held that "payable" means unpaid benefits which are already due. See also Allstate Ins. Co. v. Rudnick, 706 So.2d 389 (Fla. 4th DCA 1998). The court in Kokotis provided a more expansive definition, ruling that "`payable' ... includes expenses which have not yet accrued but which will result from the covered injury." 679 So.2d at 297. Unlike the present case, in Pizzarelli and Kokotis the jury verdicts included future damages. Thus, the question in each of those cases was whether a defendant who was being assessed for future damages which would or could ultimately be covered by PIP insurance was entitled to the set-off. The fact that the jury in the present case awarded no future damages distinguishes this case from both Pizzarelli and Kokotis.
Accordingly, we affirm in part, and reverse in part the trial court's decision to grant Renfroe a set-off for PIP benefits in the amount of $10,000. We remand with directions to enter final judgment for Renfroe in the amount of $31,695.20, based upon the trial court's award of costs and fees pursuant to section 627.736 in the amount of $48,695.20, *1100 less the jury award to Pate of $17,000.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.
MINER and WOLF, JJ., concur.
NOTES
[1] Though the trial court noted a discrepancy between the amount of damages for past medical expenses awarded by the jury ($12,000) and the medical benefits previously paid by workers' compensation ($11,391), Renfroe has not argued on appeal that the discrepancy creates a situation in which some amount of PIP is "payable." We decline to reach that question in view of the parties' unanimous position that all of Pate's wage loss and medical expenses had been paid by his workers' compensation carrier.