CANADY, Judge.
State Farm Fire and Casualty Company and Nationwide Mutual Fire Insurance Company, uninsured motorist insurance carriers, appeal a judgment in favor of Scott David Pettigrew and Victoria L. Pet-tigrew on their uninsured motorist claims. Because the trial court erred in excluding certain evidence which the appellant insurers sought to introduce concerning claims for prior injuries suffered by Mr. Petti-grew, we reverse the judgment and remand for a new trial.
I. BACKGROUND
Mr. Pettigrew allegedly was injured in an automobile collision on June 12, 1996. The Pettigrews sued Marshall Sawdey, whose vehicle had collided with a vehicle owned and driven by Dawn Medin, in which Mr. Pettigrew was a passenger. Mr. Pettigrew also sued Medin’s uninsured motorist carrier, State Farm, as well as Pettigrew’s own uninsured motorist carrier, Nationwide. Mr. Pettigrew’s claim against Sawdey was settled, and the claims against the appellant uninsured motorist carriers proceeded. The trial resulted in a jury verdict finding that the June 12, 1996, automobile accident was a legal cause of permanent injury to Mr. Pettigrew. The jury awarded damages to Mr. Pettigrew for future lost earning ability and noneco-nomic damages. The jury also awarded damages to Mrs. Pettigrew on her consortium claim.
Prior to trial, Mr. Pettigrew dropped his claim for medical expenses and past lost' earnings. He thus proceeded to trial Mdth claims for future lost earning ability and past and future noneconomic damages. In advance of the trial, Mr. Pettigrew filed an objection and a motion to strike the appellants’ witnesses and exhibits relating to Mr. Pettigrew’s workers’ compensation claims for two prior work-related accidents which had occurred in 1991 and 1994. Subsequently, Mr. Pettigrew filed omnibus motions in limine, seeking the exclusion from evidence of all workers’ compensation files and claims.
In its response to Mr. Pettigrew’s efforts to exclude the evidence concerning workers’ compensation claims, State Farm asserted that the injuries Mr. Pettigrew attributed to the 1996 automobile accident were the same injuries that he had attributed to his 1991 and 1994 work-related accidents. State Farm sought to present evidence concerning the claims for the 1991 and 1994 work-related accidents to the jury in an effort to establish that the 1996 automobile accident was not the cause of Mr. Pettigrew’s injuries or to show that his injuries — -and the damages claimed — were at least partially attributable to the work-related accidents. State Farm also sought to introduce that evidence to impeach Mr. Pettigrew and Mrs. Pettigrew and their expert witness based on the inconsistent position they had taken in the workers’ compensation litigation concerning the source of Mr. Pettigrew’s injuries. In his litigation on the uninsured motorist claim, Mr. Pettigrew contended he had suffered injury to his right shoulder, his right biceps tendon, his right elbow, and his ulnar-and radial nerves. He had claimed similar injuries in connection with the earlier work-related accidents.
State Farm relied on an order of the judge of compensation claims issued on September 20, 1999, determining that the injuries claimed by Mr. Pettigrew in the workers’ compensation proceeding were attributable to the work-related accidents *194 in 1991 and 1994. In addition to seeking to submit Mr. Pettigrew’s workers’ compensation records to the jury, State Farm asserted that the physicians who had attributed treatment expenses in the workers’ compensation proceeding to the work-related accident should be subject to cross-examination at trial on that issue. In response to Mr. Pettigrew’s objection to evidence of “monetary claims” connected with the work-related injuries, State Farm stated that it was not seeking to admit into evidence a “dollar figure.”
Although the trial court acknowledged the relevance of evidence relating to the cause of Mr. Pettigrew’s injuries that was introduced in the workers’ compensation proceeding, it ultimately placed severe restrictions on the admission of the workers’ compensation records and deposition testimony. The trial court ruled that the defense could not “put in any records that say insurance or workers’ comp or bring that out in any way, shape, or form.” At trial, the trial court reiterated its pretrial ruling. The court stated:
[N]o reference of any kind in any way, shape, or form to prior litigation, okay, none. Prior medical condition is fair game.... And if you want to impeach him with didn’t your office manager send a bill to the comp carrier, I’ll excuse the jury and let’s proffer it on the record, but I’m not going to let you do it in front of the jury.
The trial court further explained: “I’m trying to keep the jury from knowing that there was a worker’s compensation litigation claim or case.”
The defense proffered various workers’ compensation documents, including a petition dated November 10, 1998, signed by Mr. Pettigrew, seeking benefits for the 1991 and 1994 work-related accidents, which claimed injuries to Mr. Pettigrew’s “[rjight shoulder, right wrist, both knees, [and] ulnar [and] radial nerve[s]” in connection with the 1991 and 1994 work-related incidents. The petition set forth treatment provided to Mr. Pettigrew by Dr. Joseph Noah, including a prosthesis replacement which Dr. Noah surgically installed on May 8, 1996 — shortly before the automobile accident at issue. Also proffered were various medical notes from the workers’ compensation records. No mention is made in either the petition or the medical notes of the automobile accident on June 12,1996.
The defense also proffered a “Stipulation in Support of Joint Petition for Order Approving a Lump-Sum Settlement” dated March 2001, as well as the “Final Compensation Order” entered on September 30, 1999, by the judge of compensation claims. The stipulation makes no mention of the automobile accident in 1996, although it does refer to a nonwork related incident in October 1997. The stipulation contains a statement that “the Employee/Claimant agrees no accidental injuries ... other than specifically mentioned herein have been sustained.” The order similarly is devoid of any reference to the 1996 automobile accident. It details the treatment received by Mr. Pettigrew, including a shoulder arthrodesis (fusion) on September 30, 1998. The order states that all the medical expenses incurred in connection with that procedure were compensable. Mr. Pettigrew had previously amended his petition for workers’ compensation benefits to include those expenses.
The defense also proffered certain portions of the video deposition testimony of Dr. Joseph Noah. Among the portions of the deposition excluded from evidence was a series of questions concerning a letter to the workers’ compensation carrier dated January 9, 1997, in which Dr. Noah stated that he was “requesting authorization from Workman’s Comp” to perform a “right *195 elbow radial tunnel ulnar nerve transposition.”
At trial, there was substantial testimony concerning the injuries suffered by Mr. Pettigrew prior to the 1996 accident. Dr. Noah testified that in a letter to Mr. Petti-grew’s attorney he had attributed a 24 percent impairment rating of Mr. Petti-grew to injuries experienced prior to the 1996 auto accident. Dr. Noah also testified that Mr. Pettigrew’s shoulder joint “looked terrible” prior to the 1996 automobile accident but that as a result of that accident Mr. Pettigrew sustained a permanent injury to his elbow and aggravation of his shoulder.
In his own testimony at trial, Mr. Petti-grew testified: “The shoulder really wouldn’t let me do anything from that date that I injured it in '94.” Defense counsel confronted Mr. Pettigrew with medical records from 1999 in which his injuries were attributed to his work-related accidents with no reference to the 1996 automobile accident. When defense counsel asked Mr. Pettigrew if he had submitted the impairment rating from his physicians in connection with “any other events other than this accident,” the trial court instructed counsel to approach the bench. A conference at the bench was conducted in which the trial court stated:
You’re coming dangerously close to a mistrial. I specifically told you, I made my ruling and you are tip toeing up to the line and you’re starting to go across it to solicit the answers and that’s going to cause a mistrial. I gave you a clear ruling and you’re walking right up to the line. You know [very] well what you’re soliciting and he’s going to say, yeah, that was the workman’s comp carrier.
Mr. Pettigrew subsequently conceded that “[fit’s obvious I already had some serious shoulder and elbow and these problems and everything else before this car accident ever happened.”
Mrs. Pettigrew testified that after the 1996 automobile accident Mr. Pettigrew “progressively increased to intolerable pain.” According to Mrs. Pettigrew’s trial testimony, after the automobile accident her husband’s pain “got markedly worse.” She further testified that she and Mr. Pet-tigrew “went through a very difficult period after the automobile accident.”
II. ISSUE ON APPEAL
The appellant uninsured motorist insurers contend that the trial court erred in excluding evidence concerning Mr. Petti-grew’s workers’ compensation claims which would have established that — in the workers’ compensation proceeding — he attributed the injuries on which his claims against the appellants were based solely to work-related accidents. They contend that under Florida law a jury may not be presented evidence of a “workers’ compensation recovery or insurance recovery in the same accident as the accident at issue in trial,” but that evidence concerning a claim made by the plaintiff concerning another accident may be admitted.
The Pettigrews argue that the trial court did not abuse its discretion in excluding evidence relating to Mr. Pettigrew’s workers’ compensation claims. The Petti-grews also argue that the insurers are precluded from asserting that the exclusion of the evidence was error by their failure to raise appropriate affirmative defenses. Finally, the Pettigrews contend that any error committed by the trial court was harmless because “the jury was made aware of the prior industrial accidents due to references to them during trial.”
III. ANALYSIS
“The collateral source evidentia-ry rule has been recognized in numerous *196 cases, prohibiting admission of collateral sources in the liability trial.” Gormley v. GTE Products Corp., 587 So.2d 455, 457 (Fla.1991). The exclusion of collateral source evidence is aimed at preventing the misleading of the jury that could arise from the admission of evidence indicating that the plaintiff has already received recompense for the injury or loss at issue. A plaintiff is entitled not to have the jury impermissibly led to believe that the plaintiff is “ ‘trying to obtain a double or triple payment for one injury.’ ” Gormley, 587 So.2d at 458 (quoting Clark v. Tampa Elec. Co., 416 So.2d 475, 476 (Fla. 2d DCA 1982)).
This general principle has long been applied to exclude evidence related to workers’ compensation benefits from admission in a trial of an injured worker’s claims against a third party. See Tampa Sand & Material Co. v. Johnson, 103 So.2d 250, 253 (Fla. 2d DCA 1958) (“ ‘[Sjince information concerning workmen’s compensation is not material on a determination of the issues of liability of the third party[] and since such information would tend to confuse and mislead the jury in trying the issues of the third party’s liability, it is reversible error for any pleadings or proof relating to such workmen’s compensation to be brought before the jury.’ ” (quoting Pattison v. Highway Ins. Underwriters, 278 S.W.2d 207, 210 (Tex.Civ.App.1955))); see also John Deere Co. v. Thomas, 522 So.2d 926, 927 (Fla. 2d DCA 1988) (discussing cases in which “there was evidence adduced at trial disclosing to the jury that the plaintiffi'claimant had received benefits from various sources[ — including workers’ compensation benefits — ] thus generating the risk that the jury could perceive the plaintiff/claimant as having been compensated for the injury he sustained”).
The limitation on the admission of collateral source evidence is, however, typically applied with respect to claims for payments arising from the same event that is the basis for the claim at trial. Thus, evidence of workers’ compensation benefits is not admissible in a trial brought by the injured worker against a third party for liability arising from the same events that were the basis for the worker’s receipt of workers’ compensation benefits.
There are, of course, circumstances in which a claim for or the receipt of workers’ compensation benefits or other payments arising from events unrelated to the claim at issue may properly be excluded from evidence. Indeed, such evidence ordinarily would be inadmissible because it simply would not be relevant to the issues of liability or damages being tried. See § 90.401, Fla. Stat. (2001) (“Relevant evidence is evidence tending to prove or disprove a material fact.”). The fact that a plaintiff has sought or received workers’ compensation or other benefits for events unrelated to the claim at issue generally would not “tend[] to prove or disprove a material fact” and thus should have no bearing on a jury’s determination of that claim. It is well established that evidence of prior claims or benefits cannot properly be adduced to discredit the plaintiff for litigiousness. See Zabner v. Howard Johnson’s Inc., 227 So.2d 543, 546 (Fla. 4th DCA 1969) (holding that “plaintiffs character as being litigious is certainly not in issue”).
The amount of a settlement or judgment for a prior injury is inadmissible because it is “clearly irrelevant to the issues being tried.” Leslie v. Higgason, 779 So.2d 470, 470 (Fla. 2d DCA 2000). Evidence concerning a “[plaintiffs] previous injury” may, however, be relevant to the issue of the defendant’s liability or the amount of damages due. Id.
*197 There are also circumstances where evidence specifically concerning litigation or claims by a plaintiff for a prior injury will be considered relevant to matters at issue and therefore admissible. Thus, “a plaintiff may properly be questioned about prior lawsuits or claims for injuries similar to those complained of in the present lawsuit trial.” Zenchak v. Kaeufer, 612 So.2d 725, 726 (Fla. 4th DCA 1993). Evidence related to such prior claims is admissible because it is “relevant to determin[ing] the credibility of the [plaintiffs] testimony” regarding injuries sustained in a subsequent accident for which suit is brought. Id. As the court explained in Zabner:
[A] plaintiff may properly be cross[-]examined as to his previous injuries, physical condition, claims[,] or actions for injuries similar to that constituting the basis of the present action for the purpose of showing that his present physical condition is not the result of the injury presently sued for but was caused wholly or partially by an earlier injury or pre-existing condition.
227 So.2d at 545. See also Hicks v. Daymude, 190 So.2d 6, 7 (Fla. 1st DCA 1966) (holding that plaintiff was properly confronted “with her answers to questions in a deposition taken in [an earlier suit], in which she admitted [a] prior ... incident” in which she had fallen); cf. Lumbermens Mut. Cas. Co. v. Poling, 823 So.2d 805, 806-07 (Fla. 5th DCA 2002) (holding that trial court erred in excluding from evidence “the application for social security benefits that [the plaintiff] made eight months prior to the accident [at issue] in which he described in detail his inability to work” which was “probative in establishing [the plaintiffs] condition prior to the accident” and stating that “since [the plaintiff] was denied [social security] benefits ... there was no collateral source”). Similarly, evidence relating to a subsequent personal injury claim is admissible as relevant evidence “because it tend[s] to prove that [the plaintiffs] presently claimed injuries resulted from a subsequent accident.” Holmes v. Redland Constr. Co., 557 So.2d 911, 912 (Fla. 3d DCA 1990).
Such evidence regarding claims by a plaintiff arising from an event other than the accident or other occurrence at issue is not evidence of a collateral source. For a payment to be from a collateral source there must be an identity between the event giving rise to the plaintiffs claim that is at issue and the event giving rise to the other source of payment. The traditional substantive collateral source rule of damages permitting a plaintiffs recovery from a tortfeasor to be undiminished by benefits the plaintiff received from collateral sources was based on the principle that “ ‘a defendant tortfeasor may not benefit from the fact that the plaintiff has received money from other sources as a result of the defendant’s tort.’ ” Dean v. Am. Family Mut. Ins. Co., 535 N.W.2d 342, 345 (Minn.1995) (quoting Black’s Law Dictionary 262 (6th ed.1990)). See also Paradis v. Thomas, 150 So.2d 457, 458 (Fla. 2d DCA 1963) (“ ‘[T]otal or partial compensation for an injury received by the injured party from a collateral source wholly independent of the wrongdoer will not operate to lessen the damages recoverable from the person causing the injury.’ ”) (quoting 15 Am.Jur. Damages § 198 (1938)). Accordingly, a payment is from a collateral source only if the payment is made “ ‘as a result of the defendant’s tort,’ ” Dean, 535 N.W.2d at 345, that is, arises from the same event that is at issue in the plaintiffs current claim. In the absence of such an identity of the precipitating event, the source of payment is an unrelated source, not a collateral source.
We therefore conclude that the trial court erred in determining that the evi *198 dence related to Mr. Pettigrew’s prior workers’ compensation claims which the insurers sought to introduce was collateral source evidence. The trial court consequently abused its discretion by excluding that evidence.
We reject the Pettigrews’ contention that the insurers’ failure to assert an affirmative defense based on Mr. Pet-tigrew’s workers’ compensation claims precludes the insurers from raising their argument concerning the trial court’s exclusion o,f evidence. No such affirmative defense was necessary to preserve .the insurers’ right to contest the causation and damage elements of the Pettigrews’ claim. See Hicks, 190 So.2d at 8 (stating that “the settled law of this state [is] that the matter of damages and the extent of a plaintiffs injuries are properly presented under a general denial”).
We likewise reject the Pettigrews’ claim that any error by the trial court was harmless. Although the jury was presented with some of the same facts contained in the excluded evidence through other means, the excluded evidence was not merely cumulative. The limitation imposed by the trial court thwarted the efforts of the defense to attack the credibility of the Pettigrews and their witnesses by establishing that they had in previous litigation taken a position concerning the source of Mr. Pettigrew’s injuries that was totally at odds with their position in the instant case. The substantial evidence presented to the jury concerning Mr. Pettigrew’s work-related injuries was no substitute for the relevant evidence concerning the inconsistent position previously asserted by the Pettigrews and their witnesses. The improper exclusion of evidence substantially interfered with the insurers’ ability to present a crucial element of their defense.
“[A]fter an examination of the entire case” we conclude “that the error complained of has resulted in a miscarriage of justice.” § 59.041, Fla. Stat. (2001). In other words, “considering all the facts peculiar to the particular case under scrutiny” we conclude that “it is reasonably probable that a result more favorable to the appellants] would have been reached if the error had not been committed.” Damico v. Lundberg, 379 So.2d 964, 965 (Fla. 2d DCA 1979).
IV. CONCLUSION
The judgment against the appellants is reversed, and the case is remanded for a new trial.
Reversed and remanded.
FULMER and CASANUEVA, JJ., Concur.