# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

ELIZABETH D. BUCHMAN,

Appellant,

v.

JOHN F. McDONALD,

Appellee.

No. 2D2024-1121

———————————————

September 5, 2025

Appeal from the Circuit Court for Hillsborough County; Lindsay M. Alvarez, Judge.

Michael E. Beam of Doran, Beam & Farrell, P.A., New Port Richey, for Appellant.

Drew W. Peeler and Kevin D. Franz of Boyd & Jenerette, P.A., Boca Raton, for Appellee.

ROTHSTEIN-YOUAKIM, Judge.

On this appeal of a final judgment after a jury trial, Elizabeth Buchman challenges the trial court's posttrial setoff of her damages award with payments that she received from third-party sources. Because the court erroneously reduced Buchman's award by (1) contractual discounts for expenses that were unrelated to the damages award and (2) a $2,440 personal injury protection (PIP) payment for an expense that was not included in the award, we reverse those portions of the judgment. In all other respects, we affirm.

Buchman sued John McDonald for negligence following a 2015 car accident in Florida. McDonald admitted negligence, and the suit proceeded to trial on the issue of damages. At trial, Buchman contended that McDonald's negligence had caused her to sustain permanent injury and to incur $114,973.75 in medical expenses from providers in Florida and, years later, in Massachusetts, where she has her primary residence. The jury, however, awarded just $24,482.90 for past medical expenses in Florida.

Although the jury did not return an itemized verdict, the expense records, coupled with McDonald's closing argument, allow us to precisely match the jury's award with specific expenses. Buchman sought the following damages for medical expenses she purportedly incurred in Florida shortly following the accident:

| | |
|---|---|
| Florida Wellness | $ 5,095.90 |
| Katz Orthopedic Institute | $ 1,937.00 |
| Rose Radiology | $ 6,600.00 |
| Trinity Spine Center | $10,850.00 |
| Palm Harbor MRI | $ 2,440.00 |
| Total Florida expenses: | $26,922.90 |

She also sought recovery of the following expenses that she purportedly incurred years later in Massachusetts:

| | |
|---|---|
| Northshore/Partners Healthcare | $84,510.85 |
| Harmeling Physical Therapy | $ 410.00 |
| Bay State Physical Therapy | $ 3,130.00 |
| Total Massachusetts expenses: | $88,050.85 |

McDonald argued in closing that the jury should not award Buchman *any* damages. Alternatively, he argued, Buchman in no event should recover any of the Massachusetts expenses because they were caused not by the Florida accident but by arthritis and a subsequent fall.

Nor should she recover the $2,440 expense that she purportedly incurred at Palm Harbor MRI because her visit there never happened:

> But if you find that there was any legal cause, there was any causation, then I submit that the amount of money should be limited. Right? The amount of money that you should be awarding is limited to this treatment we'll call it in Florida. Right? Based on the timeline. And that amount, treatment in Florida is $24,482.90. Okay? $24,482.90. That's the treatment for the strain/sprain that could have happened to her neck.

> And I'll tell you [Buchman's Florida damages] doesn't include this charge from Palm Harbor because that didn't happen. That's the one she cancelled because she was claustrophobic. You'll see it in the records. So that total amount, that $24,482.90 that's what it includes.

Apparently persuaded by McDonald's alternative argument, the jury awarded Buchman exactly that amount.

Posttrial, McDonald moved to offset the jury's award with $41,202.37 in discounts that her insurer had negotiated for the Massachusetts expenses and with the full $8,000 in PIP benefits that Buchman had received for the Florida accident, which included $2,440 for the MRI. After a hearing, the trial court granted McDonald's motion and amended Buchman's damages award to zero before ultimately entering final judgment.

On appeal, Buchman argues that the trial court incorrectly applied Florida law in offsetting the contractual adjustments for the Massachusetts expenses, which the jury had effectively found unrelated, and the $2,440 in PIP benefits for the expense of the MRI, which the jury likewise did not award. Upon our de novo review, *see Matrisciani v. Garrison Prop. & Cas. Ins. Co.*, 298 So. 3d 53, 58 (Fla. 4th DCA 2020)

3

("Orders reducing a verdict pursuant to a setoff are reviewed de novo."), we agree.[1]

## Discussion

As an initial matter, McDonald contends that we may not infer from the jury's lump-sum award which past medical expenses were and were not included. But although courts typically refrain from looking behind a lump-sum award to make such determinations, we are not required to ignore the obvious where, as here, a direct line can be drawn to the awarded expenses from the evidence and specific arguments presented at the trial. *See, e.g., Aetna Cas. & Sur. Co. v. Langel*, 587 So. 2d 1370, 1373 (Fla. 4th DCA 1991) (noting that although the jury returned a general verdict for $450,000, "there is every indication—and no reason to believe otherwise—that the amount awarded by the jury was the *total* amount of damages suffered by [the plaintiffs] in the two accidents and that the amount awarded over and above the stipulated amounts included intangibles as well as the disputed future special damages"); *compare also Torres-Torres v. KW Int'l, Inc.*, No. 5:18-cv-164-Oc-30PRL, 2020 WL 13389274, at *1 (M.D. Fla. Apr. 7, 2020) ("Even though the award of past medical expenses was not broken down by provider, 'it is not difficult to square the verdict with the evidence and conclude that these benefit payments are duplicated in the award.' " (quoting *Primo v. State Farm Mut. Auto Ins. Co.*, No. 3:13-CV-64-J-32MCR, 2014 WL

---

[1] Buchman also argues that the trial court erred in failing to offset from the $8,000 in PIP payments the cost of her premium for those benefits, but she did not make that argument below and therefore cannot make it now. *See, e.g., Aills v. Boemi*, 29 So. 3d 1105, 1109 (Fla. 2010) ("[T]o be preserved for appeal, 'the specific legal ground upon which a claim is based must be raised at trial and a claim different than that will not be heard on appeal.' " (quoting *Chamberlain v. State*, 881 So. 2d 1087, 1100 (Fla. 2004)).

6769344, at *2 (M.D. Fla. Dec. 1, 2014))), *with Johnson v. LaSalle*, 774 So. 2d 760, 761 (Fla. 4th DCA 2000) (declining to speculate as to how much of an undifferentiated damages award represented economic versus noneconomic damages).

We therefore turn to the legal basis for the trial court's decision. In reducing Buchman's award to zero, the court cited without further elaboration section 768.76, Florida Statutes (2024), *Woudhuizen v. Smith*, 241 So. 3d 216 (Fla. 5th DCA 2018), and *State Farm Fire & Casualty Co. v. Pettigrew*, 884 So. 2d 191 (Fla. 2d DCA 2004). We start, as always, with the plain language of the pertinent statute.

Section 768.76(1) provides:

> In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which *damages are awarded to compensate the claimant for losses sustained,* the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources . . . .

(Emphasis added.) "Collateral sources" include, in pertinent part:

> Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by her or him or provided by others.

§ 768.76(2)(a)2.

Although section 768.76(1) thus requires that the damages award be reduced by the "total of all amounts" from PIP or health insurers, *see* § 768.76(1), 2(a)2, we do not read that directive as untethered from the earlier, highlighted portion of the sentence. To the contrary, "it is axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole. Where possible, courts must give full effect

to *all* statutory provisions and construe related statutory provisions in harmony with one another." *Brittany's Place Condo. Ass'n, Inc. v. U.S. Bank, N.A.*, 205 So. 3d 794, 798 (Fla. 2d DCA 2016) (quoting *Knowles v. Beverly Enters.–Fla., Inc.*, 898 So. 2d 1, 6 (Fla. 2004)). Surely this caveat applies no less strongly when considering the meaning of a single sentence within a single statutory provision. *See Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc.,* 948 So. 2d 599, 606 (Fla. 2006) (noting that "significance and effect must be given to every word, phrase, sentence, and part of the statute if possible" (quoting *Hechtman v. Nations Title Ins. of N.Y.,* 840 So. 2d 993, 996 (Fla. 2003))).

Accordingly, we conclude that "total of all amounts which have been paid for the benefit of the claimant" must be read in the context of the damages that the jury has awarded "for losses sustained." And here, the jury necessarily determined that McDonald's negligence did not cause Buchman to "sustain" any losses for the Massachusetts expenses or for the MRI, and it did not award damages for them.

We note that our reading of the plain language of section 768.76 is consistent with the history of that section and the caselaw discussing it. Enacted as part of Florida's Tort Reform and Insurance Act of 1986, section 768.76 abrogated the common law collateral source damages rule, which effectively permitted double recovery. *Joerg v. State Farm Mut. Auto. Ins. Co.,* 176 So. 3d 1247, 1249 (Fla. 2015). Consequently, we must narrowly construe this statute and may not interpret it "beyond what was clearly specified," *see Schoeff v. R.J. Reynolds Tobacco Co.,* 232 So. 3d 294, 304 (Fla. 2017), as "[t]he presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard," *see Thornber v. City of Fort Walton Beach,* 568 So. 2d 914, 918 (Fla. 1990). Section 768.76 "evinces the legislature's intent to

prevent plaintiffs from receiving a windfall by being compensated *twice* for the *same* medical bills by both their insurance company and by the tortfeasor." *Coop. Leasing, Inc. v. Johnson*, 872 So. 2d 956, 959 (Fla. 2d DCA 2004) (emphases added). But absent explicit and clear language of something beyond that, we decline to interpret the statute in a way that would prevent plaintiffs from being compensated even *once* for those bills when a jury has awarded them as damages.[2] We therefore refuse McDonald's request to interpret in isolation the language "total of all amounts which have been paid for the benefit of the claimant" to offset amounts that we know the jury did not award.

Neither *Woudhuizen* nor *Pettigrew* helps McDonald. In *Woudhuizen*, the trial court was confronted with a verdict that awarded lost wages that the defendant sought to offset with social security disability payments. 241 So. 3d at 217. The court denied the offset, reasoning that the jury's award was likely for a period that predated the disability payments and noting that it was the defendant's burden to prove the offset. *Id.* The Fifth District reversed, explaining that nothing in section 768.76 requires a defendant to obtain an itemized verdict to obtain an offset and that there is no statutory requirement that there be a "dollar for dollar" match between the jury's verdict and any subsequent offset. *Id.* at 218 ("We have no authority to require a line by line itemization in every verdict before giving effect to section 768.76(1) where

---

[2] Indeed, were we to do so, we would perversely be giving *defendants* an unearned windfall at plaintiffs' expense: any time the jury awarded something less than all the plaintiff's claimed damages, the defendant could nevertheless freely offset the award with third-party payments for *unawarded* expenses. In other words, a tortfeasor defendant could escape *any* payment for his or her wrongdoing merely because he or she was something less than 100% liable for the plaintiff's alleged injuries—which is exactly what happened in the trial court here.

the Legislature has declined to do so."). Here, however, we have the functional equivalent of an itemized verdict form. Simply put, McDonald cannot tell the jury which amounts to award, succeed in that effort *to the penny*, and then subsequently rely on *Woudhuizen* to reduce Buchman's award to zero based on amounts that were plainly not awarded.

*Pettigrew*, if anything, helps Buchman, not McDonald. In *Pettigrew* we reversed a trial court's evidentiary ruling that essentially precluded a defendant from referring to past workers' compensation claims involving the very same injury that was the subject of the pending lawsuit, on the basis that it was improper "collateral source" evidence. 884 So. 2d at 193. We determined that the court had erred because there was a sufficient "identity" between the claims in that lawsuit and the prior workers' compensation claims. *Id.* at 197. We noted, however, that "[i]n the absence of such an identity of the precipitating event [and the event giving rise to the other source of payment], the source of payment is an *unrelated* source, not a collateral source." *Id.* Here, McDonald effectively persuaded the jury that the later Massachusetts expenses were not "precipitated" by the 2015 auto accident between the parties and were therefore unrelated, not collateral.

Moreover, the plain language of the specific PIP collateral source statute confirms that the trial court erred in offsetting from the award the $2,440 for the Palm Harbor MRI. That statute provides that "[a]n injured party who is entitled to bring suit under the provisions of ss. 627.730–627.7405, or his or her legal representative, shall have no right to recover *any damages for which personal injury protection benefits are paid or payable*." § 627.736(3), Fla. Stat. (2024) (emphasis added); *see also Norman v. Farrow*, 880 So. 2d 557, 560 (Fla. 2004) ("[S]ection 627.736(3) dictates that an insured plaintiff has 'no right to recover'

8

damages paid or payable by PIP benefits."). But here, Buchman did not recover the $2,440 as "damages," regardless of whether they were paid.[3] And as with section 768.76, the purpose of offsetting PIP benefits under section 627.736(3) is to prevent *double* recovery. *See Pate v. Renfroe*, 715 So. 2d 1094, 1099 (Fla. 1st DCA 1998) ("The purpose of a set-off is to avoid duplication of benefits."); *see also McKenna v. Carlson*, 771 So. 2d 555, 558 (Fla. 5th DCA 2000) (stating that the purpose of a PIP setoff is "to prevent a plaintiff from obtaining a double recovery, *i.e.,* receiving as damages sums for which PIP benefits were paid" (quoting § 627.736(3))).[4]

Accordingly, the trial court erred by reducing Buchman's damages award by the amounts corresponding to the Massachusetts-based expenses and by the $2,440 MRI invoice. We therefore reverse the judgment to the extent that we instruct the court to enter a setoff in the amount of $5,560 and to revise the judgment accordingly. In all other respects, the judgment is affirmed.

Affirmed in part, reversed in part, and remanded with instructions.

VILLANTI, J., Concurs.
MOE, J., Dissents with opinion.

---

[3] Whether Buchman was reimbursed by her PIP insurer for an expense that she did not actually incur is a matter between her and her insurer and is outside the scope of this appeal.

[4] Although *Carpenter v. Chavez*, 200 So. 3d 212, 214–15 (Fla. 2d DCA 2016), and *Aetna Casualty & Surety Co. v. Langel*, 587 So. 2d 1370, 1373 (Fla. 4th DCA 1991), on which McDonald relies, generally stand for the "common sense" proposition that courts will assume that core PIP payments are included in a jury award for medical expenses, nowhere do they say that that assumption would hold when we know, as we do here, that a particular PIP expense was excluded from the award.

9

MOE, Judge, Dissenting.

Respectfully, I would affirm.

According to section 768.76(1), if damages are awarded in "any action" governed by the statute and in which liability is either admitted or determined by the trier of fact, then "the court *shall* reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources . . . ." § 768.76(1) (emphasis added).

Here, liability was admitted in an action governed by the statute and the jury awarded Ms. Buchman damages. Both the PIP benefits Ms. Buchman received, and the health insurance payments and adjustments made on her behalf meet the statutory definition of "collateral sources." § 768.76(2)(a)2 (defining "collateral sources" as "Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by her or him or provided by others.").

Once the requirements of the statute were satisfied, the legislature's choice of "shall" conveys that the trial judge had no discretion to deny the setoff for any reason, much less the reason advanced by Ms. Buchman. *See* Antonin Scalia & Bryan Garner, *Reading Law: Interpretation of Legal Texts* 114 (2012) ("[W]hen the word *shall* can reasonably be read as mandatory, it ought to be so read."). However alluring it may be as a matter of common sense, even if there had been a special verdict form that itemized the medical expenses awarded (and, critically, there was not), I see no textual root from which the trial court could have concluded that it had discretion to deny the setoff. Courts are not at liberty to carve out discretion that the

10

legislature precluded in the text. I agree with the Fifth District's assessment that the plain language of section 768.76 requires evidence of a plaintiff's receipt of benefits from a collateral source for losses sustained but it "does not require a claimant to further prove that each dollar of a collateral source was actually awarded by the jury." *Wouldhuizen v. Smith*, 241 So. 3d 216, 218 (Fla. 5th DCA 2018) (Einsnaugle, J.).

Even judges who share a philosophical approach can read the same text differently. I sincerely respect the majority's approach, but my conclusion reflects a belief that the spirit of the law cannot prevail over its letter. Scalia & Garner, *Reading Law* at 93 (discussing "[t]he false notion that the spirit of a statute should prevail over its letter").

_____

Opinion subject to revision prior to official publication.