PER CURIAM.
The district attorney for the Fifteenth Judicial Circuit filed this petition for a writ of mandamus directing Judge Johnny Hardwick to reinstate D.B.Y.’s[1] probation and to direct that he undergo a sexual-offender risk assessment as required by law before he be released from probation.[2] *822 In 2001, D.B.Y. was indicted for six counts of enticing a child in violation of § 13A-6-69, Ala.Code 1975. In November 2001, he was granted youthful offender (‘TO”) status and pleaded guilty to all counts as charged in the indictments. Judge Hard-wick sentenced him to three years’ imprisonment on each count; the sentences were to run consecutively. D.B.Y. appealed to this Court. In April 2002, we held that the sentence imposed was illegal because Alabama law clearly prohibits consecutive sentences for youthful offenders that exceed the statutory maximum of three years; we remanded the case to the Montgomery Circuit Court to correct its illegal sentence. D.Y. v. State, 841 So.2d 304 (Ala.Crim.App.2002). In August 2002, Judge Hardwick resentenced D.B.Y. to 12 months in the Montgomery County Detention Facility and two years on supervised probation. Approximately two years later, in November 2004, before D.B.Y.’s probation was scheduled to terminate, the State filed a motion to have D.B.Y. undergo a sexual-offender risk assessment as required by § 15-20-28, Ala.Code 1975. Judge Hardwick set the motion for a hearing. On December 6, 2004, before the hearing was held, D.B.Y.’s probation officer released D.B.Y. from probation. Judge Hardwick then denied the State’s motion for a risk assessment. The district attorney filed this mandamus petition.[3]
The district attorney asserts that Judge Hardwick was without jurisdiction to terminate D.B.Y.’s probation without first complying with § 15-20-28, Ala.Code 1975. Section 15-20-28, states, in part:
“(a) Sixty days prior to the projected release of a juvenile criminal sex offender, the treatment provider shall provide a risk assessment of the juvenile to the sentencing court and the juvenile probation officer.
“(b) Upon receiving the risk assessment, the juvenile probation officer shall immediately notify the state, and either the parent, guardian, or custodian of the juvenile criminal sex offender, or attorney for the juvenile criminal sex offender, of the pending release and provide them with the risk assessment.
“(c) Unless otherwise ordered by the sentencing court, the juvenile criminal sexual offender shall not be subject to notification upon release.
“(d) Within thirty days of receiving the risk assessment, the state may petition the court to apply notification.
“(e) No juvenile criminal sex offender shall be removed from the supervision of the court until such time as the juvenile criminal sex offender has completed treatment, the treatment provider has filed a risk assessment with the court, and the state has had an opportunity to file a petition to apply notification.
“(f) Upon receiving a petition to apply notification, the sentencing court shall conduct a hearing on the risk of the juvenile criminal sex offender to the community. The sentencing court may deny the petition or grant the petition based upon, but not limited to, the following factors relevant to the risk of re-offense:
“(1) Conditions of release that minimize risk of re-offense, including, but not limited to, whether the offender is under supervision of probation or parole; receiving counseling, therapy, or treatment; or residing in a home situ *823 ation that provides guidance and supervision.
“(2) Physical conditions that minimize risk of re-offense, including but not limited to, advanced age or debilitating illness.
“(3) Criminal history factors indicative of high risk of re-offense, including whether the offender’s conduct was found to be characterized by repetitive and compulsive behavior.
“(4) Other criminal history factors to be considered in determining risk, including:
“a. The relationship between the offender and the victim.
“b. Whether the offense involved the use of a weapon, violence, or infliction of serious bodily injury.
“c. The number, date, and nature of prior offenses.
“(5) Whether psychological or psychiatric profiles indicate a risk of recidivism.
“(6) The offender’s response to treatment.
“(7) Recent behavior, including behavior while confined or while under supervision in the community as well as behavior in the community following service of sentence.
“(8) Recent threats against persons or expressions of intent to commit additional crimes.”
(Emphasis added.) D.B.Y. does not contest the application of this section to him. He pleaded guilty to six counts of enticing a child. He was granted YO status. According to § 15-20-31, Ala.Code 1975, the juvenile-registration procedures apply to D.B.Y.
D.B.Y. first argues that this mandamus should not issue because, he argues, the State has another remedy — it can appeal the circuit court’s ruling. However, the State has only a limited right to appeal. As this Court stated in State v. A.R.C., 873 So.2d 261, 266 (Ala.Crim.App.2003):
“In Alabama, the State has a limited right to appeal and that right is conditioned on compliance with certain requirements. The State can appeal a pretrial ruling holding a statute unconstitutional, suppressing evidence, dismissing the charges, quashing an arrest or search warrant, or granting a habeas corpus petition and ordering an individual released from custody. See §§ 12-12-70,12-22-90, and 12-22-91, Ala.Code 1975, and Rule 15.7, Ala.R.Crim.P.”
(Footnotes omitted.) The State has no right to appeal the ruling made in this case — mandamus is the State’s only remedy. See Smith v. State, 447 So.2d 1334 (Ala.1984); State v. Monette, 887 So.2d 314, 315 (Ala.Crim.App.2004). See also State v. Drewry, 519 S.2d 591 (Ala.Crim.App.1987). This case is correctly before this Court by way of mandamus petition.
The district attorney argues that the terms of § 15-20-28, Ala.Code 1975, are mandatory and that Judge Hardwick had no authority to deny its request to have D.B.Y. undergo a sexual-offender risk assessment. D.B.Y. argues that the State’s motion was untimely. He further argues that to place D.B.Y. back on supervised probation so that he may undergo a sexual-offender risk assessment would violate his constitutional rights.
In 1999, when the Alabama Legislature rewrote the community-notification laws, it enacted § 15-20-20.1, Ala.Code 1975. This section specifically addresses the legislative intent in adopting community-notification laws for both juvenile and adult sexual offenders. Section 15-20-20.1, as that sec *824 tion relates to juvenile sexual offenders, states, in pertinent part:
“Juvenile sex offenders, like their adult counterparts, pose a danger to the public. Research has shown, however, that there are significant differences between adult and juvenile criminal sexual offenders. Juveniles are much more likely to respond favorably to sexual offender treatment. Juvenile offenders have a shorter history of committing sexual offenses. They are less likely to have deviant sexual arousal patterns and are not as practiced in avoiding responsibility for their abusive behavior. Juveniles are dependent upon adults for food and shelter, as well as the emotional and practical support vital to treatment efforts. Earlier intervention increases the opportunity for success in teaching juveniles how to reduce their risk of sexually re-offending. The Legislature finds that juvenile criminal sex offenders should be subject to the Community Notification Act, but that certain precautions should be taken to target the juveniles that pose the more serious threats to the public.
“Therefore, the state policy is to assist local law enforcement agencies’ efforts to protect their communities by requiring criminal sex offenders to register, record their address of residence, to be photographed, fingerprinted, to authorize the release of necessary and relevant information about criminal sex offenders to the public, to mandate residency and employment restrictions upon criminal sex offenders, and to provide certain discretion to judges for application of these requirements as provided in this article.”
Section 15-20-28(e), Ala.Code 1975, specifically states: “No juvenile criminal sex offender shall be removed from the supervision of the court until such time as ... the treatment provider has filed a risk assessment with the court .... ”
The Legislature chose to use the term “shall” throughout § 15-20-28, Ala. Code 1975. The Alabama Supreme Court in Ex parte Prudential Insurance Co. of America, 721 So.2d 1135 (Ala.1998), stated the following concerning the Legislature’s use of the words “shall” and “must” in § 6-5-430, Ala.Code 1975:
“ ‘Words used in [a] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the Legislature must be given effect.’
“Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991) (citations omitted); see also Ex parte New England Mutual Life Ins. Co., 663 So.2d 952 (Ala.1995), and State Dep’t of Transportation v. McLelland, 639 So.2d 1370 (Ala.1994). The word ‘shall’ is clear and unambiguous and is imperative and mandatory. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa, supra; Taylor v. Cox, 710 So.2d 406 (Ala.1998); Ex parte First Family Financial Services, Inc., 718 So.2d 658 (Ala.1998) (on application for rehearingXinterpreting the word ‘shall’ as used in § 6-3-21.1). The word ‘shall’ has been defined as follows:
“ ‘As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term “shall” is a word of command, and one which has always or which must be given a com *825 pulsory meaning; as denoting obligation. The word in ordinary usage means “must” and is inconsistent with a concept of discretion.’
“Black’s Law Dictionary 1375 (6th ed.1991).”
721 So.2d at 1138. Accordingly, we find that compliance with § 15-20-28, Ala.Code 1975, is mandatory.[4]
The community-notification laws as they apply to juvenile sexual offenders were enacted long after the Legislature enacted the Youthful-Offender Act in 1971.
“ ‘The first rule of statutory construction is that the intent of the legislature should be given effect. Ex parte McCall, 596 So.2d 4 (Ala.1992); Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala.1991). However, when possible, the intent of the legislature should be gathered from the language of the statute itself. Dillard, supra. Thus, where the language of the statute is plain, the court must give effect to the clear meaning of that language. Ex parte United Service Stations, Inc., 628 So.2d 501 (Ala.1993) IMED Corp. v. Systems Eng’g Associates Corp., 602 So.2d 344 (Ala.1992).’
“Beavers v. County of Walker, 645 So.2d 1365, 1376-77 (Ala.1994) See also Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991) (“Words used in [a] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ (citations omitted)). Moreover, this Court has stated;
“ ‘ “In determining legislative intent, statutes are, where possible, construed in harmony with statutes existing at the time of enactment, so that each is afforded a field of operation.” Sullivan v. State ex rel. Attorney General of Alabama, 472 So.2d 970, 973 (Ala.1985). “It is a fundamental principle of statutory construction that in enacting the statute the legislature had full knowledge and information as to prior and existing law and legislation on the subject of the statute.” Miller v. State, 349 So.2d 129, 131 (Ala.Cr.App.1977). “[I]n cases of conflicting statutes on the same subject, the latest expression of the legislature is the law. Where a conflict exists between statutes, the last enactment must take precedence.” [Baldwin County v.] Jenkins, 494 So.2d [584,] 588 [(Ala.1986)] (citations omitted).’
“Hatcher v. State, 547 So.2d 905, 906-07 (Ala.Crim.App.1989).”
Soles v. State, 820 So.2d 163, 164-65 (Ala.Crim.App.2001).
*826 Section 15-20-28(e), Ala.Code 1975, provides: “No juvenile criminal sex offender shall be removed from the supervision of the court until such time as ... the treatment provider has filed a risk assessment with the court .... ” The mandatory wording of this statute is evidence that the Legislature intended that no juvenile sex offender be released from custody until that offender undergoes a sexual-offender risk assessment. With this legislative intent in mind, we conclude that the State’s filing of its motion for a sexual-offender risk assessment before the expiration of D.B.Y.’s probation operated to toll D.B.Y.’s probation. To reach any other conclusion would foreclose the State from seeking enforcement of § 15-20-28, Ala.Code 1975, given that a motion for sexual-offender risk assessment is filed near the end of an offender’s term of probation.[5]
Based on the mandatory wording of § 15-20-28 and on the clearly stated legislative intent, we can reach no other reasonable conclusion — Judge Hardwick had no authority to release D.B.Y. from probation until he underwent a sexual-offender risk assessment. Compliance with this section is not discretionary on the part of the sentencing judge but is mandatory and is a prerequisite to implementing the special community-notification procedures for juvenile sexual offenders. To hold otherwise would be contrary to the stated legislative intent. Judge Hardwick was obligated to ensure that the mandatory provisions of § 15-20-28, Ala.Code 1975, were complied with before D.B.Y. was released from probation.
D.B.Y. also argues that we should not grant this petition because the district attorney failed to file the motion for a sexual-offender risk assessment 60 days before D.B.Y.’s projected release date. However, § 15-20-28(a), Ala.Code 1975, specifically provides that the “treatment provider” shall provide a risk assessment of the juvenile 60 days before his projected release date. Section 15-20-21(10), Ala.Code 1975, specifically defines the responsible agencies. This section defines “responsible agency” as:
“The person or government entity whose duty it is to obtain information from a criminal sex offender before release and to transmit that information to police departments or sheriffs responsible for providing community notification. For a criminal sex offender being released from state prison, the responsible agency is the Department of Corrections. For a criminal sex offender being released from a county jail, the responsible agency is the sheriff of that county. For a criminal sex offender being released from a municipal jail, the responsible agency is the police department of that municipality. For a criminal sex offender being placed on probation, including conditional discharge or unconditional discharge, without any sentence of incarceration, the responsible agency is the sentencing court. For a criminal sex offender being released from the Department of Youth Services, the responsible agency is the Department of Youth Services.”
We see no indication in the documents filed with this Court that the district attorney had any responsibility to comply with *827 or failed to comply with § 15-20-28, Ala. Code 1975.
Accordingly, this petition is due to be granted. Judge Hardwick is directed to order that D.B.Y. undergo a sexual-offender risk assessment as required by § 15-20-28, Ala.Code 1975.
PETITION GRANTED; WRIT ISSUED.
McMILLAN, P.J., and COBB, BASCHAB, SHAW, and WISE, JJ., concur.

. The petitioner filed his direct appeal with this Court using only his first and last names, so that appeal is styled “D.Y. v. State.”

. Section 15-20-21(11), Ala.Code 1975, defines “risk assessment” as:
"A written report on the assessment of risk for sexually re-offending conducted by a sexual treatment program approved by the Department of Youth Services. The report shall include, but not be limited to, the following regarding the criminal sexual offender: Criminal history, mental status, attitude, previous sexual offender treatment and response to treatment, social factors, conditions of release expected to minimize risk of sexual re-offending, and characteristics of the criminal sex offense.”

. This mandamus petition was timely. The district attorney filed this petition seven days after the circuit court's ruling. See Rule 21(a), Ala.R.App.P., and State - v. Gaines, [Ms. CR-03-1201, July 16, 2004] — So.2d - (Ala.Crim.App.2004).

. We are aware that this Court has strictly enforced the maximum three-year period of probation or commitment for youthful offenders contained in § 15 — 19—6(a), Ala.Code 1975. See Warwick v. State, 843 So.2d 832 (Ala.Crim.App.2002) (defendant's five-year split sentence exceeded the maximum term of imprisonment under the youthful-offender act); D.Y., supra (defendant’s sentence of six consecutive three-year terms of imprisonment exceeded the maximum term of imprisonment under the youthful-offender act); J.N.J. v. State, 690 So.2d 519 (Ala.Crim.App.1996) (defendant’s sentence of five years' probation exceeded the maximum probationary period provided for under the youthful-offender act). However, in this case D.B.Y.'s term of probation was tolled when the State filed its motion for a sexual-offender risk assessment.

. Though the language in § 15-20-28, Ala. Code 1975, strongly suggests that as a matter of law a youthful offender's probation may be extended past the maximum three-year probation period in order to comply with this statute, because the State’s motion was filed before D.B.Y.’s probation expired we do not reach the question of whether a similar motion filed after a term of probation has expired would likewise be entitled to enforcement.