KEYSER, JANIS BRUSTARES, Associate Judge.
JVA Enterprises I, LLC and Enterprises, Inc. appeal a judgment in favor of James S. Prentice. We affirm the trial court’s denial of the appellants’ motion to dismiss for fraud on the court. However, because the trial court erred in excluding certain evidence which the appellants sought to introduce concerning claims for prior injuries suffered by Prentice, we reverse the judgment and remand for a new trial.
James Prentice (Prentice) served as chief engineer on the yacht Enterprise V, which is owned by Enterprises, Inc. (Enterprise) and operated by JVA Enterprises I, LLC (JVA) from September 2003 through May 2004. Prentice sued JVA and Enterprise for injuries allegedly suffered in December 2003 and March 2004. He asserted claims for unseaworthiness against Enterprise, maintenance and cure under admiralty law against both of the defendants, and negligence against JVA. *111 Prentice alleged that, as a result of JVA’s negligence, he herniated a disc in his neck at the C6-C7 level and tore his right rota-tor cuff, both of which required surgical repair.
In answers to interrogatories, Prentice denied that he was seeking compensation for exacerbation of any pre-existing injury. He did, however, disclose that he had filed a workers’ compensation claim and a personal injury suit in California in the 1980s.
Prior to Prentice’s deposition, a paralegal at the law firm representing JVA and Enterprise discovered that Prentice’s name and social security number appeared three times in workers’ compensation files in California. At his deposition, the defense counsel asked Prentice about the earlier claims in California. Prentice admitted to one prior workers’ compensation claim, but did not remember the other two. Prentice stated that he had been working as an ironworker when he strained his lower back and hurt his knee in the mid-1980s. He was out of work for four or five months, during which time he received physical therapy. He settled that workers’ compensation claim for a minimal amount. When asked if he had ever filed a workers’ compensation claim where he sustained neck, head, shoulder and back injury, Prentice answered “no.”
The workers’ compensation claim records revealed that Prentice was injured on January 10, 1991, while working for a crane company in Los Angeles. The claim indicated that Prentice was drilling holes when he hit a rebar and “pulled his back out.” He injured his back, neck and shoulder. When Prentice saw his physician on January 15, 1991, the doctor’s medical report described his symptoms as follows: “[plain in his upper back radiating into left arm, stiffness in both sides of neck, hard to turn head and use his arm.” The doctor diagnosed him as suffering from “Cervieo-brachial Syndrome, Brachial Neuritis/Ra-diculitis, Thoracic strain sprain, [plain in thoracic spine.”
In February 1991, Prentice was seen by two separate physicians who diagnosed cervical sprain and thoracic sprain. His complaints were constant sharp, throbbing pain in his upper back that traveled to his neck and both shoulders. He also complained of throbbing, aching bilateral shoulder pain that traveled down his right arm to his right hand.
X-rays taken in 1991 showed a slight decrease in the C5-6 disc space with a slight degree of left neural foraminal sten-osis at C4-5. An MRI performed in 1991 revealed “the presence of small far right lateral disc bulges at C3-4 and C4-5 with moderate right neural foraminal stenosis at both levels.”
In 1991, Prentice was diagnosed with “chronic cervical myofascial strain superimposed upon degenerative disc disease at C5-6 and 1.5 to 2 millimeter right lateral disc bulges at C3-4 and C4-5 with moderate right neural foraminal stenosis at both levels.” Prentice’s physician found, for the purposes of a disability rating, that Prentice’s condition be considered “permanent and stationary.” He felt that Prentice should “not engage in occupations requiring heavy lifting as defined by the Guidelines for Work Capacity” and felt that if Prentice were to engage in occupations exceeding those guidelines, he would be liable to have significant lasting exacerbation of his symptoms and a possible worsening of his underlying condition. The physician believed that fifty percent of Prentice’s injuries were from the natural progression of pre-existing degenerative disease and the remaining fifty percent was attributable to the injury which occurred on January 10, 1991. Prentice settled the January 10, 1991, workers’ compensation claim for $16,000.
*112 Approximately one month prior to trial, in May of 2008, JVA and Enterprise filed a motion for sanctions, including dismissal, against Prentice for concealing his 1991 injuries. Prentice defended against that motion, arguing that his earlier injury had been dissimilar to the present injury. Prentice relied on a report of Dr. Coats which indicated the present injury — a C6-7 disc herniation — was not related to the earlier 1991 accident which dealt with a degenerative disc disease at C5-6 and disc bulges at C3-4 and C4-5.
The trial court denied JVA and Enterprise’s motion for sanctions, finding the temporal distance of the 1991 injury to the 2008 trial to be compelling. In denying the motion, the trial court indicated this might be an appropriate area for cross-examination or impeachment.
On the same day the trial court denied JVA and Enterprise’s motion for sanctions, Prentice filed a motion in limine, asking the trial court to preclude admission of the 1991 workers’ compensation records because they were unrelated to the 2003 and 2004 injuries. Prentice argued that the old records were for a wholly different injury, which was totally unrelated to this claim. The trial court granted the motion in limine and found that JVA could not “bring up this California injury in any way, shape, or form during trial.”
JVA and Enterprise filed a motion for reconsideration and proffered evidence of an affidavit of Dr. Lichtblau, a rehabilitation physician expert, who opined that a patient must give a truthful past medical history before a doctor can provide a full, fair, and honest evaluation. JVA also proffered the deposition testimony of Dr. Cohen, who had examined the 1991 California case and noted that the MRI revealed disc abnormalities at C3-4, C4-5, C5-6, which were just above the location where Prentice had his current injury at C6-7. Dr. Cohen noted that the 1991 injury had been “permanent,” thus suggesting it was material to the diagnosis and evaluation of Prentice’s current condition. Dr. Cohen further testified that the disc bulges that were diagnosed in 1991 would “[ujsually” worsen over time and that the heavy lifting would exacerbate Prentice’s condition. Although the prior injury was in 1991, Dr. Cohen stated the passage of time is “pretty much wholly irrelevant” because the injury is permanent and “it doesn’t go away.” JVA and Enterprise’s motion for reconsideration was denied by the trial court.
At trial, Prentice testified that in December 2003, the captain instructed him to open a valve in the waste-disposal system and, while trying to pry it open using a bar as a lever, the valve released, causing the bar to strike him in his ear and left shoulder. (Prentice contended this caused his herniated disc.) The second injury occurred in March 2004, when he was tightening bolts on the waste-disposal system. Prentice had his hands over his head and felt something in his right shoulder pop. (Prentice contended this caused his torn right rotator cuff.) Prentice was diagnosed with a possible tear in his right rotator cuff and a herniated disc at the C6-7 level. Dr. Coats, Prentice’s treating neurosurgeon, performed a spinal fusion of C6-7 and was of the opinion that the injury to the C6-7 disc was due to the December 2003 accident.
This appeal follows the jury’s subsequent substantial award of damages to Prentice for lost wages and benefits, medical expenses, and for physical and emotional pain.
We find no abuse of discretion in the trial court’s refusal to dismiss the case for fraud on the court. In Arzuman v. *113 Saud, 843 So.2d 950, 952 (Fla. 4th DCA 2003), this court held the trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court. The requisite fraud on the court occurs where “it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party’s claim or defense.” Id. (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)). “Because ‘dismissal sounds the death knell of the lawsuit,’ courts must reserve such strong medicine for instances where the defaulting party’s misconduct is correspondingly egregious.’ ” Arzuman, 843 So.2d at 952 (citations omitted). While a trial court has discretion to dismiss an action for fraud on the court, it should exercise this severe sanction “only in extreme circumstances.” Id.
When imposing this harshest of sanctions, trial courts should weigh the “policy favoring adjudication on the merits” with the need to “maintain the integrity of the judicial system.” Id.; Bass v. City of Pembroke Pines, 991 So.2d 1008, 1011 (Fla. 4th DCA 2008). While it appears Prentice may have a selective memory regarding his medical history, the issue is not whether any member of this panel would make the same decision as the trial judge given the facts of this case. Bass, 991 So.2d at 1011. The ultimate question is “whether reasonable minds could differ as to the propriety of that decision.” Id. We find that reasonable minds could differ under the facts of this case.
Prentice did disclose in his answers to interrogatories a prior injury to his lower back on the job as an ironworker in Los Angeles in the 1980s and that he had a workers’ compensation claim and a third party claim in California. This disclosure led the appellants to discover his 1991 injury to his neck and shoulder. As noted by the court in Bologna v. Schlanger, 995 So.2d 526, 529 (Fla. 5th DCA 2008), rev. denied, 7 So.3d 1098 (Fla.2009), in reversing a dismissal for alleged fraud, the fact that the plaintiffs answers to interrogatories were adequate for the defense to learn of her treatment for back pain prior to her deposition, was “relevant to whether there existed a scheme to defraud.”
The trial court, in denying the appellants’ motion to dismiss for fraud on the court, also found the temporal distance of the 1991 injury to the 2008 trial to be compelling. As Judge Griffin pointed out in her specially concurring opinion in Bologna:
We all know that the capacity to remember and the categories of what we remember varies widely among individuals and depends on a number of common factors, such as age, stress, fatigue, emotion. I am skeptical that all of the plaintiffs in the recent profusion of “fraud on the court” cases are thieves and perjurers. Certainly the background of many of these individuals prior to becoming personal injury plaintiffs suggests otherwise.
Pain and medical treatment may be, for many, not so easy to recollect with accuracy. Just as some people seem to revel in every aspect of every medical event in their lives, past and present, and seem able to talk endlessly about it, others are the opposite. They do not want to recall it, prefer not to think about it and almost never discuss it. I would even wager that if judges were put to the test — i.e., required to describe in detail their experiences of pain and medical care four years in the past — they might *114 be surprised at their own lack of accuracy-
Id. at 580 (emphasis in original).
For the foregoing reasons, we affirm the trial court’s denial of JVA’s motion to dismiss for fraud on the court.
Our affirmance of the trial court’s refusal to dismiss the case is based, in part, on the policy favoring adjudication on the merits. However, it is the application of precisely that policy which requires us to reverse the trial court’s exclusion of evidence of the 1991 injuries from the trial below.
The facts of Cross v. Pumpco, Inc., 910 So.2d 824 (Fla. 4th DCA 2005), are analogous to the facts of this case. In Cross, the appellant claimed injuries to the left side of his neck and shoulder from a 1999 accident. When asked whether he had any prior problems with his neck and shoulder, the appellant stated “never.” The trial court dismissed the action based on the appellant’s failure to disclose prior similar injury to his neck and shoulder. In reversing the trial court’s dismissal for fraud on the court, this court found that the alleged misconduct did not rise to the level of warranting the imposition of such a harsh sanction, stating:
Except in the most extreme cases, where it appears that the process of trial has itself been subverted, factual inconsistencies, and even false statements, are well managed through the use of impeachment and traditional discovery sanctions.
Id. at 328. Accord Bologna, 995 So.2d at 528 (poor recollection, dissemblance, even lying can be well managed through cross-examination); Ibarra v. Izaguirre, 985 So.2d 1117, 1119 (Fla. 2d DCA 2008) (alleged inconsistencies can be better handled by impeachment and/or vigorous cross-examination).
A plaintiff may properly be cross-examined as to his previous injuries, physical condition, claims or actions for injuries similar to those constituting the basis for the present action for the purpose of showing that his present physical condition is not the result of the injury presently sued for, but was caused wholly or partially by an earlier injury or preexisting condition. Zenchak v. Kaeufer, 612 So.2d 725, 726 (Fla. 4th DCA 1993); Zabner v. Howard Johnson’s Inc. of Fla., 227 So.2d 543, 545 (Fla. 4th DCA 1969); State Farm Fire & Cas. Co. v. Pettigrew, 884 So.2d 191, 196-97 (Fla. 2d DCA 2004). Prentice’s position that injuries related to the 1991 industrial claim, the thoracic strain injury, cervical disc bulges at C3-4 and C4-5, and the physician finding of permanent injury related to the cervical spine were totally different from, and unrelated to, the C6-7 disc herniation that he sustained in the 2003 accident was a matter of argument for trial, as opposed to exclusion from evidence.
While the prior injuries in 1991 may not have been the identical injuries sustained in 2003 and 2004, they involved the same general area of Prentice’s body, the neck and shoulder, and were relevant to the plaintiffs credibility in light of his lack of memory of this injury. We conclude that JVA and Enterprise should have been allowed to cross-examine Prentice on the prior injury, complaints and workers’ compensation claim and, therefore, the trial court abused its discretion by excluding such evidence. The improper exclusion of evidence thwarted the defense efforts to attack Prentice’s credibility and challenge the cause of his current physical complaints and limitations. JVA and Enterprise intended to rely on the California medical records to show that Prentice had claimed the same symptoms in 1991 and that his prior injury was such that Pren *115 tice would be susceptible to future injuries. The trial court’s exclusion of this evidence substantially interfered with the appellants’ ability to present a crucial element of their defense. See Pettigrew, 884 So.2d at 197-98.
The prejudice to the defendants by the trial court’s exclusion of this evidence was compounded when in final argument the plaintiffs counsel, who had succeeded in excluding this evidence, stated:
[Wjhere is the testimony to support the speculation of some big, bad neck injury, or shoulder [injury] in the past? ... Where is the testimony or evidence?
Case law indicates it is improper for a lawyer, who has successfully excluded evidence, to seek an advantage before the jury because the evidence was not presented. See Carnival Corp. v. Pajares, 972 So.2d 973, 975-76 (Fla. 3d DCA 2007) (plaintiffs comment on defendant’s failure to offer testimony that plaintiff successfully moved in limine to preclude improperly implied that the failure to offer such testimony was because defendant had no favorable testimony to provide); Hernandez v. Home Depot USA, Inc., 695 So.2d 484, 485 (Fla. 3d DCA 1997) (error in excluding plaintiffs expert testimony on the issue of negligence was unfairly exacerbated and compounded when, in final argument, defense counsel stated: “What is the evidence that we were negligent?”).
JVA also contends the trial court erred in refusing to set off Prentice’s recovery for cure with insurance payments from JVA’s insurer. The record indicates the facts were not sufficiently developed to determine whether JVA was entitled to a set-off for these payments pursuant to Johnson v. Cenac Towing, Inc., 544 F.3d 296 (5th Cir.2008). Accordingly, this matter may be revisited upon remand to the trial court.
Finally, we find that the trial court erred in awarding pre-judgment interest to Prentice. See McPhillamy v. Brown & Root, Inc., 810 F.2d 529 (5th Cir.1987).
For these reasons, the judgment against the defendants is reversed and the cause remanded for a new trial. The final judgments awarding pre-judgment interest, attorney’s fees and costs, are likewise reversed. In light of our reversal for a new trial, we need not address the remaining issues on appeal.

Affirmed in part, reversed in part, and remanded for a new trial.

GROSS, C.J. and CIKLIN, J., concur.