LEVINE, J.,
dissenting.
I respectfully dissent from the majority opinion. I do not believe that the trial court abused its discretion by dismissing the case after determining that appellant had presented false testimony to the jury and the trial court. .
To illustrate that the trial court did not abuse its discretion in the present case, I quote the following from the trial court’s well-reasoned order:
However, Mr. Herman also gave false testimony that goes to the very issues presented to the jury in this case. He *904 falsely testified that his wife led an active life leading up to the subject surgery. He described her as actively biking, dancing and walking. All of this testimony was offered to establish the alleged damages occasioned by the surgery. All of this testimony was false.
More disturbingly, Mr. Herman persuaded his daughter to support this fiction. Prior to trial, Ms. Winograd was given a list of “topics” that would be covered at trial. Mr. Herman continued to stress to Ms. Winograd the importance of telling the jury that Miriam Herman was active prior to the subject surgery. Ms. Winograd testified she went along with her father at the time of trial, but this testimony was false.
Perhaps of more significance, the Plaintiff maintained a diary which chronicled his wife’s medical treatment, including her interaction with Dr. Silver, the defendant in this case. This diary was never produced during discovery in this case and its existence was not revealed until December of 2009 when Ms. Winograd contacted defense counsel.... While the Plaintiff asserts that the diary was not requested, the Court concludes that multiple discovery requests required the production of the diary.
The diary directly contradicts Mr. Herman’s sworn testimony at trial in several key respects. ■ This false testimony included when Miriam Herman developed kidney problems, the risks explained to the Plaintiffs at the time of surgery and the option of having the surgery performed at a hospital in Miami.
[[Image here]]
This is not a case where Mr. Herman “fudged” a few facts to make himself look better in the eyes of the jury. The Court concludes that Mr. Herman consciously set out to mislead the Court and the jury with the only possible motivation being pecuniary gain.
The trial court heard testimony at an evidentiary hearing on appellee’s motion to dismiss, and determined that appellant’s daughter and appellant’s sister-in-law were credible witnesses. The trial court then determined, based on testimony the trial court expressly found credible, that appellant gave false testimony that went “to the very issues presented to the jury in this case.” Significantly, the trial court relied in great part on the diary kept by appellant, which the trial court determined “directly contradicts Mr. Herman’s sworn testimony at trial in several key respects.” As this court has stated,
The requisite fraud on the court occurs where “it can be demonstrated, clearly and convincingly, that a party has sen-tiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party’s claim or defense.”
JVA Enters., I, LLC v. Prentice, 48 So.3d 109, 113 (Fla. 4th DCA 2010) (citation omitted).
In Bass v. City of Pembroke Pines, 991 So.2d 1008 (Fla. 4th DCA 2008), this court “tested” “[t]he standard of review applicable to orders imposing sanctions for fraud upon the court.” Id. at 1009. In Bass, the plaintiff, in answering interrogatories and in deposition testimony, omitted information regarding her medical history. The plaintiff primarily failed to disclose her history of migraine headaches and the names of several physicians who had treated her for these headaches. On appeal of the trial court’s decision to dismiss for fraud on the court, this court first noted that “the limited scope of our review ... dictates the outcome of this appeal.” Id. *905 at 1011. We ultimately deferred to the “specific findings by the trial court” that the plaintiffs discovery responses were “absolute, intentional, and untruthful,” and affirmed the sanction of dismissal because “reasonable minds could differ on the imposition of this sanction.” Id. at 1012.
In this case, even under a narrowed abuse of discretion standard, a reasonable judge could find that the evidence of false testimony justified dismissal. Even if one were to find the analysis a “close call,” that would not justify overturning the trial court’s factual findings and final determination. This court found, regarding a trial court’s decision concerning a motion to dismiss for fraud on the court, that “[t]he ultimate question is ‘whether reasonable minds could differ as to the propriety of that decision.’ ” JVA Enters., 48 So.3d at 113 (quoting Bass, 991 So.2d at 1011). We found “that reasonable minds could differ under the facts of th[at] case.” Id. Similarly, under the facts of the present case, reasonable minds could differ as to the propriety of the trial court’s decision. See id. (noting “the issue is not whether any member of this panel would make the same decision as the trial judge”).
Although one conceivably may find a lesser sanction to be a more appropriate sanction, that is not our standard. “While this court might have imposed a lesser sanction, the question in this ease is close enough that we cannot declare the lower court to have abused its discretion.” Cox v. Burke, 706 So.2d 43, 47 (Fla. 5th DCA 1998). Clearly, the trial court’s determination that appellant’s daughter and sister-in-law were credible witnesses, in conjunction with the trial court’s reliance • on a diary written by the appellant himself would, at the least, constitute the type of evidence that is “close enough” for our court not to find the trial court to have abused its discretion. The majority goes into detail reviewing the evidence presented to the trial court at the evidentiary hearing on the motion to dismiss. The majority, for example, determines that “[ajlthough the trial court found Ms. Wino-grad’s testimony to be credible, we simply cannot accept that her testimony provided clear and convincing evidence warranting dismissal of the case.” Aside from the clear deference we must accord the trial court’s determination of credibility,[3] this determination also fails to account for the cumulative evidence heard by the trial court on the several issues determined to be key by that judge. See, e.g., McKnight v. Evancheck, 907 So.2d 699, 701 (Fla. 4th DCA 2005) (“the trial court was within its discretion to determine that the misrepresentations made by [plaintiff] permeated the case”). Here, the trial court acted within its discretion in finding that appellant’s falsehoods at trial about the timing of Mrs. Herman’s kidney problems, about what appellant and Mrs. Herman had been *906 told regarding the risks of surgery, and about Mrs. Herman’s activity levels were sufficiently “central” to the case to justify dismissal. Put another way, I respectfully disagree that the evidentiary conflicts in this case presented “classic jury question[s],” because the trial court could have properly found, in contrast, that appellant’s falsehoods in their totality rose to the level where “the process of trial has itself been subverted.” Cross v. Pumpco, Inc., 910 So.2d 324, 328 (Fla. 4th DCA 2005).
The majority quotes with approval from Jacob v. Henderson, 840 So.2d 1167, 1169 (Fla. 2d DCA 2003), that “every intersection claim” with “ten eyewitnesses” could be subject to dismissal as a fraudulent claim. I believe the facts in this case are quite different from the Jacob court’s hypothetical scenario with the differing perceptions and memories of “driver A” and “driver B.” Every time individuals testify at odds with each other does not mean that there is fraud being perpetrated on the court. Witnesses can view the same incident and in good faith perceive different results.
What makes this case different from the Jacob court’s scenario is the differing testimony from the same witness: the testimony of appellant at the first trial, and the contradictory evidence emanating out of the extrinsic evidence of appellant’s diary. My view that the trial court’s ruling on the motion to dismiss should be sustained is limited to the unusual facts of this case. After all, as a practical matter, how many times would one expect to see the appearance of a litigant’s diary, whose authorship is undisputed by both sides, contradict the previous trial testimony of the very author of the diary?
The inevitable result of our overturning the trial court’s dismissal for fraudulent conduct, on the unique facts of this case, is that one will be hard pressed in the future to find other factual scenarios in which dismissals for fraudulent conduct will be sustained on appellate review.
In summary, I find that the trial court did not abuse its discretion in imposing the sanction of dismissal, and I would affirm the trial court.

. Particularly, the majority suggests that the testimony of Ms. Winograd regarding Mrs. Herman’s activity levels was not "uncontro-verted proof,” because it conflicted with testimony of appellant and Mrs. Herman, and Ms. Winograd did not live with her parents. The majority also states that Ms. Winograd’s testimony is not "clear and convincing evidence” because she, as opposed to appellant or Mrs. Herman, "has admitted to giving contradictory testimony in this matter,” and her "bias may have resulted from being cut out of Mr. Herman’s will.” Again, however, the trial court stated that it expressly found the testimony of Ms. Winograd to be credible. Under our standard in cases involving dismissals for fraud upon the court, ”[t]o justify reversal, .it would have to be shown on appeal that the trial court clearly erred in its interpretation of the facts and the use of its judgment and not merely that the court, or another fact-finder, might have made a different factual determination.” Baker v. Myers Tractor Servs., Inc., 765 So.2d 149, 150 (Fla. 1st DCA 2000) (quoting Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983)).