ON MOTION FOR REHEARING

LEVINE, J.
We grant appellees’ motion for rehearing, withdraw our previous opinion, and substitute the following in its place.
The issue presented for our review is whether the trial court erred in granting a motion to dismiss based upon the commission of fraud upon the trial court. We find that the trial court did not err since there was competent, substantial evidence to support the trial court’s decision. We find, specifically, that there was competent, substantial evidence that appellant sentiently set in motion an unconscionable scheme calculated to interfere with the judicial system’s ability to adjudicate the matter impartially. We affirm the order of the trial court, as we find that the trial court did not abuse its discretion in imposing the sanction of dismissal.
Edward Herman, individually and as personal representative of the Estate of Miriam Herman, his late wife, timely appeals a final order dismissing his wrongful death medical malpractice lawsuit for fraud on the court. In 1999, Miriam Herman filed a medical malpractice lawsuit against her cardiologist, Dr. Mitchell Silver, alleging that Dr. Silver caused her to go into renal failure by negligently failing to obtain a nephrology consult before clearing her for open heart surgery in 1997. After her death in 2001, appellant Edward Herman was appointed as the personal representative of the estate and the case was converted to a wrongful death suit.
In late 2002, then-defendant Bethesda Memorial Hospital propounded requests for production, one of which asked for “any notes or diaries maintained by Edward Herman or Miriam Herman that pertain to the issues raised in this lawsuit.” A few days later, Dr. Silver served the same request for production, including the same request for diaries.
Although Mr. Herman did keep a diary chronicling his wife’s medical condition from March 1997 (when she was admitted into the hospital) to July 1997, this diary was never disclosed to the defense in discovery. Mr. Herman never responded to either Bethesda’s or Dr. Silver’s request for production. An August 2003 motion to compel production filed by Dr. Silver was never set for hearing or ruled on.
The case went to trial in 2006. Mr. Herman presented expert testimony from a cardiologist that Dr. Silver negligently failed to get a nephrology consult in spite of clear medical signs that Mrs. Herman needed treatment before being cleared for surgery. He also presented expert testimony that any reasonable nephrologist would have implemented treatment and medication that would have prevented her from going into renal failure, given her medical condition.
At trial, Mr. Herman testified at length about his background, his life with Mrs. *586 Herman, and the medical care she received. Mr. Herman testified that the first time he ever learned anything about Mrs. Herman’s renal insufficiency was when she was in the hospital after the surgery. He also testified that, before the surgery, his wife rode bicycles, went for walks, and danced.
Mrs. Herman’s deposition was taken before her death and the deposition recording was played at trial. Mrs. Herman denied that she had problems with her kidneys prior to the surgery. She also testified that she would routinely take walks with her husband for exercise. She was not specifically asked about whether she rode bicycles or went dancing.
The Hermans’ daughter, Ms. Susan Winograd, testified at trial regarding her mother’s physical activity. She testified that the family would go bike riding when she was younger. She also testified that her mother was a vibrant woman who loved dancing, but explained that her mother had to give up dancing after the surgery.
The 2006 trial resulted in a hung jury, and the case was scheduled to be retried in 2010.
In late 2009, Mr. Herman and Ms. Wino-grad were involved in a major argument, and Mr. Herman threatened to take her out of his will. Ms. Winograd then sent a letter to defense counsel, asserting that her father’s testimony at trial contained “many lies” and informing defense counsel of the existence of her father’s diary regarding Mrs. Herman’s medical condition.
Dr. Silver subsequently filed a motion to dismiss the case for fraud upon the court. The motion alleged, in pertinent part, that Mr. Herman committed perjury in his September 2000 deposition and in his trial testimony, and that Mr. Herman intentionally withheld a diary which contradicted his sworn testimony.
The trial court held an evidentiary hearing on the motion to dismiss. At the hearing, the defense presented testimony from Ms. Winograd, Mrs. Herman’s sister, and Mrs. Herman’s brother-in-law. Mr. Herman requested that the trial court review Mr. Herman’s 2010 updated deposition, in which he responded to the allegations against him.
The defense presented evidence which was inconsistent with Mr. Herman’s testimony on a number of issues. The contradictions relevant to this opinion are as follows:
Kidney Problems Pre-Surgery. At trial, Mr. Herman testified that the first time he ever learned anything about Mrs. Herman having renal insufficiency was when she was in the hospital after the surgery. However, Mr. Herman’s diary contains several references to his wife’s kidney problems during her hospitalization in the weeks leading up to the surgery.
Risks of Surgery. At trial, Mr. Herman gave the following testimony regarding whether the doctors explained the risks of stroke and renal failure: “They discussed the risk of the surgery, assuming or on the basis that it was going to go favorably, but they never did discuss with us the eventualities if it didn’t go right, Dr. Silver. And that wasn’t something that was explained to us.” However, in his diary, Mr. Herman mentions that Dr. Silver discussed the risk of stroke and that Mrs. Herman would be placed on a blood thinner to reduce the risk of clotting.
Option of Different Hospital. At trial, Mr. Herman testified that he did not recall having a discussion with Dr. Silver in which Dr. Silver told the Hermans to consider going to a university hospital *587 due to the seriousness of the situation. Specifically, Mr. Herman testified: “No. The essence of what you’re saying is that they didn’t have a cardiologist unit in Bethesda. It was as simple as that. They couldn’t perform the procedure there, so they had to find another hospital. And that’s how we ended up in Delray.” However, Mr. Herman’s diary alluded to a possible transfer to a university hospital.
Mrs. Herman’s Activity Levels. At trial, Mr. Herman testified that, before the surgery, his "wife rode bicycles, walked, and danced. However, at the evidentiary hearing, Mr. Herman’s daughter testified that none of this was true; she claimed that her father pressured her before the trial to lie and testify that her mother rode bicycles, danced, and did a lot of walking.
Jacket Testimony. At trial, Mr. Herman testified that his deceased wife was “with us today,” telling the jury that he was wearing a jacket that his wife bought for him. However, his daughter testified that he fabricated the story about the jacket, that his new wife actually bought him the jacket, and that he later joked with the new wife about his testimony regarding the jacket.
The trial court took the matter under advisement and later entered a written order dismissing the case for fraud on the court. The trial court concluded that Mr. Herman “has sentiently set in motion a scheme to defraud” after considering the standard set forth in JVA Enterprises, I, LLC v. Prentice, 48 So.3d 109, 112 (Fla. 4th DCA 2010). The trial court first noted that it found Mr. Herman’s testimony at the trial regarding his personal background false, but that this testimony was “relatively minor and, alone, could be left as fodder for cross examination.” We quote the following from the trial court’s well-reasoned order:
However, Mr. Herman also gave false testimony that goes to the very issues presented to the jury in this case. He falsely testified that his wife led an active life leading up to the subject surgery. He described her as actively biking, dancing and walking. All of this testimony was offered to establish the alleged damages occasioned by the surgery. All of this testimony was false.
More disturbingly, Mr. Herman persuaded his daughter to support this fiction. Prior to trial, Ms. Winograd was given a list of “topics” that would be covered at trial. Mr. Herman continued to stress to Ms. Winograd the importance of telling the jury that Miriam Herman was active prior to the subject surgery. Ms. Winograd testified she went along with her father at the time of trial, but this testimony was false.
Perhaps of more significance, the Plaintiff maintained a diary which chronicled his wife’s medical treatment, including her interaction with Dr. Silver, the defendant in this case. This diary was never produced during discovery in this case and its existence was not revealed until December of 2009 when Ms. Winograd contacted defense counsel.... While the Plaintiff asserts that the diary was not requested, the Court concludes that multiple discovery requests required the production of the diary.
The diary directly contradicts Mr. Herman’s sworn testimony at trial in several key respects. This false testimony included when Miriam Herman developed kidney problems, the risks explained to the Plaintiffs at the time of surgery and the option of having the surgery performed at a hospital in Miami.
*588 Mr. Herman went so far in his efforts to mislead the jury that he testified at trial that he wore to court each day a jacket that Miria[m] Herman had purchased for him. He described at trial how she was “with us today” because he had the “pleasure” of wearing the jacket during the trial. Ms. Winograd’s testimony, which the Court finds to be credible, established that the jacket was purchased by Mr. Herman’s second wife ... after Miriam’s death. The jacket was purchased to wear in Florida at the trial.
This is not a case where Mr. Herman “fudged” a few facts to make himself look better in the eyes of the jury. The Court concludes that Mr. Herman consciously set out to mislead the Court and the jury with the only possible motivation being pecuniary gain.
The trial court denied Mr. Herman’s motion for rehearing, and this appeal follows.
“The trial court has the inherent authority, in the exercise of its sound judicial discretion, to dismiss an action when the plaintiff has perpetrated a fraud on the court....” Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992). As such, “[w]e review orders dismissing complaints for fraud upon the court to determine if there has been an abuse of discretion.” Bass v. City of Pembroke Pines, 991 So.2d 1008, 1010-11 (Fla. 4th DCA 2008); JVA Enters., 48 So.3d at 112. This court has also stated that “[ajlthough a dismissal imposed as a sanction is reviewed under an abuse of discretion standard, the trial court’s discretion is narrowed where dismissal is imposed for fraudulent conduct such as that alleged here, in which a more stringent abuse of discretion standard is appropriate.” Bob Montgomery Real Estate v. Djokic, 858 So.2d 371, 374 (Fla. 4th DCA 2003); Cha-cha v. Transport USA, Inc., 78 So.3d 727, 730 (Fla. 4th DCA 2012).
The standard that must be met for a trial court to impose dismissal for fraudulent conduct is:
The requisite fraud on the court occurs where “it can be demonstrated, clearly and convincingly, that a party has sen-tiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party’s claim or defense.”
JVA Enters., 48 So.3d at 113 (Fla. 4th DCA 2010) (quoting Arzuman v. Saud, 843 So.2d 950, 952 (Fla. 4th DCA 2003)). The standard of appellate review of a “clear and convincing finding” is whether the finding is supported by competent, substantial evidence. Wigley v. Hares, 82 So.3d 932, 946 (Fla. 4th DCA 2011).
When imposing the sanction of dismissal for fraud upon the court, trial courts should weigh the “policy favoring adjudication on the merits” with the need to “maintain the integrity of the judicial system.” Arzuman, 843 So.2d at 952. Trial courts should reserve this sanction “for instances where the defaulting party’s misconduct is correspondingly egregious.” Id. (citation omitted).
While “dismissal is a drastic remedy that should be used sparingly,” Hogan v. Dollar Rent A Car Sys., Inc., 783 So.2d 1211, 1213 (Fla. 4th DCA 2001), in this case, even under a narrowed abuse of discretion standard, a reasonable judge could find that the evidence of false testimony justified dismissal. There is competent, substantial evidence in the record to support the trial court’s finding of clear and convincing evidence that Mr. Herman sen-tiently set in motion a scheme to defraud *589 that was calculated to interfere with the judicial system’s ability to adjudicate the matter impartially.
The trial court heard testimony at an evidentiary hearing on appellees’ motion to dismiss, and determined that appellant’s daughter and appellant’s sister-in-law were credible witnesses. The trial court then determined, based on testimony the trial court expressly found credible, that appellant gave false testimony that went “to the very issues presented to the jury in this case.” Significantly, the trial court relied in great part on the diary kept by appellant, which the trial court determined “directly contradicts Mr. Herman’s sworn testimony at trial in several key respects.”
In Bass v. City of Pembroke Pines, 991 So.2d 1008 (Fla. 4th DCA 2008), this court “tested” “[t]he standard of review applicable to orders imposing sanctions for fraud upon the court.” Id. at 1009. In Bass, the plaintiff, in answering interrogatories and in deposition testimony, omitted information regarding her medical history. The plaintiff primarily failed to disclose her history of migraine headaches and the names of several physicians who had treated her for these headaches. On appeal of the trial court’s decision to dismiss for fraud on the court, this court first noted that “the limited scope of our review ... dictates the outcome of this appeal.” Id. at 1011. We ultimately deferred to the “specific findings by the trial court” that the plaintiffs discovery responses were “absolute, intentional, and untruthful,” and affirmed the sanction of dismissal because “reasonable minds could differ on the imposition of this sanction.” Id. at 1012.
Even if one were to find the analysis a “close call,” that would not justify overturning the trial court’s factual findings and final determination. This court found in another case regarding a trial court’s decision concerning a motion to dismiss for fraud on the court, that “[t]he ultimate question is ‘whether reasonable minds could differ as to the propriety of that decision.’ ” JVA Enters., 48 So.3d at 113 (quoting Bass, 991 So.2d at 1011). We found “that reasonable minds could differ under the facts of th[at] case.” Id. Similarly, under the facts of the present case, reasonable minds could differ as to the propriety of the trial court’s decision. See id. (noting “the issue is not whether any member of this panel would make the same decision as the trial judge”).
Although one conceivably may find a lesser sanction to be a more appropriate sanction, that is not our standard of appellate review. “While this court might have imposed a lesser sanction, the question in this case is close enough that we cannot declare the lower court to have abused its discretion.” Cox v. Burke, 706 So.2d 43, 47 (Fla. 5th DCA 1998). Clearly, the trial court’s determination that appellant’s daughter and sister-in-law were credible witnesses, in conjunction with the trial court’s reliance on a diary written by appellant himself would, at the least, constitute the type of evidence that is “close enough” for our court not to find the trial court to have abused its discretion.
The trial court acted within its discretion in finding that appellant’s collective falsehoods at trial about the timing of Mrs. Herman’s kidney problems, about what the Hermans had been told regarding the risks of surgery, and about Mrs. Herman’s activity levels were sufficiently “central” to the case to satisfy the standard for dismissal. See Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002). The trial court also specifically found that Mr. Herman had coached Ms. Winograd into giving false testimony as to Mrs. Herman’s activity levels at trial. The trial court adequately balanced the equities, and even noted in its order that certain inconsisten *590 cies, alone, were “relatively minor.” See Piunno v. R.F. Concrete Constr., Inc., 904 So.2d 658, 659 (Fla. 4th DCA 2005) (giving deference to imposition of dismissal sanction where “trial court’s written order contains a thoughtful discussion of the facts and a well-reasoned conclusion, clearly showing the court balanced the equities”). In this case, we will not substitute our judgment for that of the trial court by assessing the effect of each falsehood on the potential ultimate outcome of Mr. Herman’s case. See, e.g., McKnight v. Evancheck, 907 So.2d 699, 701 (Fla. 4th DCA 2005) (“the trial court was within its discretion to determine that the misrepresentations made by [plaintiff] permeated the case”); Savino v. Fla. Drive In Theatre Mgmt., Inc., 697 So.2d 1011, 1012 (Fla. 4th DCA 1997) (finding no abuse of discretion in dismissing personal injury action for fraud, where plaintiff “lied about matters which went to the heart of his claim on damages”).
Our decision that the trial court’s ruling on the motion to dismiss should be sustained naturally takes into account the unusual facts of this case. After all, as a practical matter, how many times would one expect to see the appearance of a litigant’s diary, whose authorship is undisputed by both sides, contradict the previous trial testimony of the very author of the diary on “several key respects”?
In summary, where “repeated fabrications undermine[ ] the integrity of’ a party’s entire case, “the trial court has the right and obligation to deter fraudulent claims from proceeding in court.” Savino, 697 So.2d at 1012. The trial court’s finding of clear and convincing evidence of the requisite calculated, unconscionable scheme allowing it to dismiss this case for fraudulent conduct is supported by competent, substantial evidence in the record. We, therefore, affirm the decision of the trial court.

Affirmed.

CIKLIN, J., concurs.
TAYLOR, J., dissents with opinion.