DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ERIC LAMAZE, TORREY PINES STABLE FLORIDA CORP.,** a Florida corporation, **TORREY PINES STABLES INC.,** an Ontario corporation, and **LITTLE CREEK INVESTMENTS INC.** a Florida corporation,
Appellants,

v.

**LORNA M. GUTHRIE, JEFFREY BRANDMAIER,** and **KNIGHTWOOD STABLES, LLC,** a Florida corporation,
Appellees.

No. 4D2023-2885

[April 30, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Maxine Cheesman, Judge; L.T. Case No. 50-2023-CA-0004240-XXXX-MB.

Brad E. Kelsky of Kelsky Law, P.A., Plantation (withdrawn as counsel after filing brief), for appellants.

Julissa Rodriguez, Aliette D. Rodz, and Aleksey Shtivelman of Shutts & Bowen LLP, Miami, and Paula C. Arias of Paula C. Arias P.A., Miami, for appellees.

WARNER, J.

Appellants, Eric Lamaze, Torrey Pines Stable Florida Corp., Torrey Pines Stables Inc., and Little Creek Investments Inc., appeal a final default judgment entered in favor of Appellees, Lorna M. Guthrie, Jeffrey Brandmaier and Knightwood Stables, LLC. The trial court granted a default after striking appellants' pleadings based upon the court's findings that appellant Eric Lamaze had committed fraud on the court by misrepresenting his inability to attend hearings. At the hearing to determine whether to strike Lamaze's pleadings, his attorney withdrew, leaving appellants unrepresented. We reverse, because the trial court abused its discretion in striking the pleadings and entering a default against all defendants, depriving them of due process.

**Facts**

This case began as a dispute over the rights to two show horses for investment purposes. Appellants, Eric Lamaze and companies owned by him (the "Lamaze Defendants," collectively, and the "Corporate Defendants" when not including Eric Lamaze) are engaged in the equestrian business. Appellees are investors who provided the Lamaze Defendants with capital in exchange for partial ownership of the two horses. In the initial complaint filed by appellees, they alleged that the Lamaze Defendants bought the horses for prices much lower than the purchase prices that they had represented to appellees, and the Lamaze Defendants pocketed the difference. Appellees also alleged that the Lamaze Defendants had sold one of the horses without appellees' permission. Appellees sought to pierce the corporate veil against Lamaze personally.

Two days after filing their complaint, appellees moved for an ex parte prejudgment writ of attachment and garnishment against the Lamaze Defendants, alleging that the Lamaze Defendants were dissipating their assets and removing property from Florida to thwart execution of any judgment against them. The court granted both writs.

The Lamaze Defendants filed an emergency motion to dissolve the writs and for an emergency hearing, claiming that Eric Lamaze was suffering from brain cancer and needed to travel to Belgium for treatment, which would not be possible if the writs were not dissolved because Lamaze's bank account was frozen. They also argued against the writs on the merits in that appellees' complaint did not allege a debt within the meaning of section 76.04, Florida Statutes (2022), nor were any of the grounds in section 76.05, Florida Statutes (2022), established for prejudgment writs when no debt was due.

The trial court held an emergency hearing in February 2023. At the hearing, while Eric Lamaze testified with respect to his medical issues, the hearing primarily consisted of testimony on the merits. The trial court granted the motion to dissolve the writs, concluding that appellees had not proved any grounds for the issuance of the writs. The order did not mention Lamaze's medical issues. However, the court ordered that the dissolution not take effect until the court could consider appellees' emergency motion for rehearing or reconsideration, or in the alternative motion for temporary stay. Although a "proposed order" appears in the record dissolving the writs, the court signed an amended order dissolving the writs the following day, allowing for a stay of the order until the appellees' motion for rehearing was heard.

Appellees filed their motion for rehearing and requested a hearing, which the court set for April 2023. Appellees filed an emergency motion to continue that hearing, and the court continued it until May. Then the appellees attempted to appeal the order dissolving the writs to this court. As a result, the May hearing was not held. We dismissed the appeal.

In the meantime, appellees filed an amended complaint, based upon an agreed order. The Lamaze Defendants answered and, like their original answer, included a counterclaim for breach of contract against appellees. Appellees obtained an extension to file an answer to the counterclaim until September 7.

Regarding the rehearing motion on the order dissolving the writs (which continued to be stayed), the trial court set a hearing for July. However, at that hearing, Lamaze could not communicate, because he had undergone a throat operation. The court offered to continue the hearing to August 15, but appellees' counsel notified the court she was unavailable. The Lamaze Defendants asked for an earlier hearing date, because their counsel told the court that Lamaze was to have brain surgery on August 11 and would be recuperating. The court's judicial assistant emailed counsel that the court would require "a doctor's note stating Mr. Lamaze can communicate and participate in a hearing." Counsel submitted a doctor's note the following day, purporting to be written by a Belgian doctor, stating that Lamaze was a patient, and that Lamaze could communicate in writing and participate in a hearing but would be having brain surgery on August 11. The doctor purportedly indicated that, after surgery, Lamaze could not participate for a lengthy period of time.

A few days later, counsel informed the court that Lamaze's surgery had been moved up to August 9. As the writs were still in place, the Lamaze Defendants were seeking an earlier hearing, but appellees' counsel was not available on the earlier dates suggested by the court. At a hearing on August 10, Lamaze's counsel informed the court that Lamaze had survived the surgery.

On August 21, 2023, counsel moved to withdraw as the Lamaze Defendants' attorney. He cited irreconcilable differences as the reason for withdrawal and requested that the trial court grant the Lamaze Defendants thirty days to obtain new counsel.

On September 14, 2023, appellees filed a motion to strike the Lamaze Defendants' pleadings, and for other relief, as a sanction for their fraud on the court. Appellees alleged that Lamaze had submitted a forged letter

from the Belgian doctor and had lied about receiving brain cancer treatments. Appellees attached findings of fact from the Ontario Superior Court of Justice, where the court found that Lamaze had committed a fraud on the court by submitting forged medical documents, including the same doctor's note submitted to the court in this case. They also attached an article from a Canadian newspaper, quoting Lamaze as claiming that the doctor's letter was never intended to be used in Ontario court but "instead [was] meant to be used to move a court date in an American lawsuit that [had] frozen his bank accounts," referring to the instant action. Appellees also attached an affidavit from a private investigator who confirmed the falsity of the Belgium doctor's note, and a text exchange transcript between one of appellees' relatives and Lamaze's former secretary which discussed Lamaze making false claims about his health. Due to this alleged fraud, appellees requested the trial court strike the Lamaze Defendants' pleadings and filings.

The trial court set appellees' motion to strike for a hearing to be held on September 22. On September 20, the Lamaze Defendants' counsel filed a supplement to his motion to withdraw, stating that, assuming the allegations from appellees' motion to strike and the findings from the Canadian court were truthful, withdrawal was now required because counsel's services had been used to provide false information to the court.

The hearing proceeded as scheduled on September 22. At the hearing's start, the Lamaze Defendants' counsel requested that the trial court hear his motion to withdraw before proceeding with the motion to strike. The trial court indicated it had not yet reviewed the motion. The court asked if Lamaze was aware that counsel was seeking to withdraw that day, to which counsel responded that he was. The court granted the motion to withdraw, finding that there was an ethical conflict between counsel and the Lamaze Defendants. Although counsel had requested a stay in his written motion, he did not request a stay at the hearing before his representation was terminated.

Appellees argued that the Lamaze Defendants' fraud was sufficiently egregious to warrant striking their pleadings and entering a default judgment for damages. Appellees argued that Lamaze had been lying about his cancer treatments from the outset of the proceedings. Appellees highlighted that the Lamaze Defendants had already been found to have committed the same misconduct in a Canadian case. Appellees provided the note purportedly from the Belgian doctor and the affidavit from the investigator as well as documents from the Canadian court. Appellees did not present any testimony.

4

The court then questioned Lamaze.  Essentially, Lamaze admitted that the letter purportedly submitted by the Belgian doctor was not correct.  He attributed its submission to his assistant, who was trying to obtain the doctor's note required by the court within a short period of time.  Lamaze acknowledged he knew that "the doctor's note" was not correct but did not stop its submission.  He testified that he did have two surgeries on his throat for throat cancer in July and August, but he did not have brain surgery.  He apologized to the court for submitting the note to get an earlier hearing.  He explained that his accounts were still frozen, and he could barely feed his horses or himself, nor could he get a lawyer, because even though the court had dissolved the writs in February, the dissolution was stayed until the rehearing motion was decided.

Lamaze's withdrawn counsel told the court that he did not question Lamaze's secretary about the purported doctor's note, because counsel had no reason to believe it was forged.

The trial court granted appellees' motion to strike the Lamaze Defendants' pleadings as a sanction for fraud on the court.  The trial court struck the pleadings and writs, and later granted a final default judgment for appellees.  From this order, the Lamaze Defendants appeal.[1]

## Analysis

"The denial of due process is fundamental error that can be raised for the first time on appeal." *Blechman v. Dely*, 138 So. 3d 1110, 1114 (Fla. 4th DCA 2014).  Whether a trial court denied a party due process is reviewed de novo. *Azure-Moore Invs. LLC v. Hoyen*, 300 So. 3d 1268, 1270 (Fla. 4th DCA 2020).  A trial court's decision not to grant a continuance to afford a party the opportunity to obtain new counsel after counsel has withdrawn is reviewed for an abuse of discretion. *Castle Club Corp. v. Liberty Int'l, Inc.*, 598 So. 2d 263, 264 (Fla. 3d DCA 1992).

The Lamaze Defendants contend that the court erred in striking their pleadings and entering a default judgment when it proceeded with the motion to strike their pleadings at the same hearing where it granted their

---

[1] After the final judgment was filed, the court also filed an order striking the pleadings.  The order includes written findings that Lamaze lied about receiving cancer treatments, submitted forged medical records, that he did so deliberately to delay and influence proceedings, and that he had committed similar fraud in the Canadian case.  More than fifteen days after the final judgment, the Lamaze Defendants filed a motion for rehearing, which was dismissed as untimely.

counsel's motion to withdraw, without providing them time to secure new counsel. We agree.

*(1) Corporate Defendants*

In *Yacht Assist, Inc. v. CRP LMC PROP Co.*, 353 So. 3d 65 (Fla. 4th DCA 2022), the trial court dismissed the corporate plaintiff's complaint at a case management hearing immediately after granting its attorney's motion to withdraw filed just before the hearing. *Id.* at 67. We noted, "[b]ecause a corporation cannot engage in the unauthorized practice of law and cannot represent itself in litigation, a reasonable opportunity must be given to a corporate litigant to obtain new counsel when a motion to withdraw is granted, even when the withdrawal occurs on the eve of trial." *Id.* at 68. We reversed the dismissal of the corporate plaintiff's case, finding that "the trial court did not afford Plaintiff any opportunity to obtain new counsel before proceeding with the case." *Id.* (emphasis omitted); *see also Castle Club*, 598 So. 2d at 264 ("The trial court abused its discretion in denying Castle Club's motion for continuance while simultaneously allowing its counsel to withdraw the very day that trial began, thereby leaving the corporation unrepresented at trial."); *Hub Fin. Corp. v. Olmetti*, 465 So. 2d 618, 619 (Fla. 4th DCA 1985) ("Permitting trial counsel to withdraw on the day of trial without granting a continuance to permit appellant to obtain new counsel was an abuse of discretion. This was especially egregious in the case of a corporation which cannot represent itself, but would be error in any event.").

Similarly, the Third District explained in *Szteinbaum v. Kaes Inversiones y Valores, C.A.*, 476 So. 2d 247 (Fla. 3d DCA 1985):

> It is well recognized that a corporation, unlike a natural person, cannot represent itself and cannot appear in a court of law without an attorney. *Nicholson Supply Co. v. First Federal Savings & Loan Association of Hardee County*, 184 So. 2d 438 (Fla. 2d DCA 1966). Courts have reflexively applied this common law rule prohibiting the unauthorized practice of law and have offered three primary justifications in support of it. First, because a corporation is a "hydra-headed entity and its shareholders are insulated from personal responsibility," there must be one designated spokesperson accountable to the court. *Oahu Plumbing and Sheet Metal, Ltd. v. Kona Construction, Inc.*, 60 Hawaii 372, 377–78, 590 P. 2d 570, 574 (1979) (citing *Austrian, Lance & Stewart, P.C. v. Hastings Properties, Inc.*, 87 Misc. 2d 25, 27, 385 N.Y.S. 2d 466, 467 (Sup. Ct.1976)). Second, "[u]nlike lay agents of

corporations, attorneys are subject to professional rules of conduct and thus amenable to disciplinary action by the court for violations of ethical standards." *Oahu Plumbing and Sheet Metal, Ltd. v. Kona Construction, Inc.*, 590 P. 2d at 574 (citing *Merco Construction Engineers, Inc. v. Municipal Court*, 21 Cal. 3d 724, 727, 581 P. 2d 636, 641, 147 Cal. Rptr. 631, 636 (1978) (in bank)). Third, attorneys purportedly have the legal skills necessary to competently participate in litigation and other proceedings. *Oahu Plumbing and Sheet Metal, Ltd. v. Kona Construction, Inc.*, 590 P.2d at 575.

*Id.* at 248 (alteration in original).

Although Lamaze owned the Corporate Defendants' entities, he could not be authorized to represent the corporations in court. Florida courts have consistently held that a corporate representative who is not an attorney is not authorized to represent a corporation in lieu of counsel. *See, e.g.*, *Pomales v. Aklipse Asset Mgmt., Inc.*, 336 So. 3d 785, 786 (Fla. 3d DCA 2022) ("Aklipse's corporate representative was not an attorney and was not authorized to represent Aklipse.").

Appellees contend that the Corporate Defendants had sufficient time to obtain new counsel after the first motion to withdraw was filed. Thus, appellees argue that the Corporate Defendants waived any due process arguments. However, we have held that a trial court must provide a corporation with a reasonable opportunity to obtain new counsel "when a motion to withdraw is **granted**, even when the withdrawal occurs on the eve of trial." *Yacht Assist*, 353 So. 3d at 68 (emphasis added). Thus, the opportunity to obtain new counsel begins when withdrawal is granted, rather than when new counsel is requested. Moreover, in this case, the original motion to withdraw requested that the court grant a continuance of thirty days to secure new counsel. The thirty days would run from when the court acts on the withdrawal request, not before. Second, after the critical motion to strike was filed, counsel then requested immediate withdrawal—within two days. Thus, the timing of that motion was more in line with *Yacht Assist.*

Thus, the trial court erred in granting the motion to withdraw as to the Corporate Defendants and proceeding to strike their pleadings without providing them with the opportunity to obtain new counsel.

*(2) Eric Lamaze*

Lamaze argues that he was denied due process when the court granted his counsel's motion to withdraw at the same hearing where the motion to strike his pleadings was heard without allowing him time to secure additional counsel. We agree that under the circumstances of this case, the court denied due process and abused its discretion by failing to grant a continuance before striking Lamaze's pleadings.

We note that in the original motion to withdraw filed in August, the Lamaze Defendants' counsel requested that the court grant a thirty-day continuance of proceedings for all defendants to find new counsel. That motion was not set for hearing. Despite the motion, counsel continued to represent the Lamaze Defendants, including agreeing to an order extending the time for answering the counterclaim and apparently attending mediation.[2] After the court set the appellees' motion to strike for a hearing, counsel filed a supplement to the withdrawal motion two days before the hearing, requesting that the original motion be granted. The record does not contain a notice of hearing for that motion. At the hearing on the motion to strike, however, counsel requested his motion to withdraw be heard first. The court granted the withdrawal motion before the motion to strike was heard.

Unlike a corporation, a natural person can proceed pro se, and therefore "the withdrawal of an attorney does not give the client an absolute right to a continuance." *Cargile-Schrage v. Schrage*, 908 So. 2d 528, 529 (Fla. 4th DCA 2005) (quoting *Cole v. Heritage Cmtys., Inc.*, 838 So. 2d 1237, 1238 (Fla. 5th DCA 2003)). However, case law suggests that when counsel moves to withdraw at the beginning of a hearing, the trial court ordinarily should continue the hearing. *See Harripersad v. Lake Park Gardens #1, Inc.*, 373 So. 3d 915, 916 (Fla. 4th DCA 2023) ("[T]he trial court erred by allowing appellant's counsel to withdraw at the same hearing that the court considered the motion to compel appellant to sign the settlement agreement, thus leaving appellant unrepresented.").

We find *Behar v. Southeast Banks Trust Co., N.A.*, 374 So. 2d 572 (Fla. 3d DCA 1979), to be a helpful contrast. In *Behar*, a divorce case, the wife's counsel opened the final hearing with an *ore tenus* motion to withdraw, but the trial court denied the motion until the hearing was over. *Id.* at 574. On appeal, the wife argued that the trial court erred by not

---

[2] A mediation report filed in the record shows that all parties attended the mediation, but no settlement was reached between plaintiffs and the Lamaze Defendants.

continuing the hearing after her counsel moved to withdraw. *Id.* In affirming the final judgment of dissolution, the Third District wrote:

> We affirm. First, the motion to withdraw was not granted until the conclusion of the September hearing, and counsel for the appellant participated in the hearing as much as counsel for the deceased husband. The trial court was eminently familiar with the parties, there having been numerous hearings before him. Further, the trial court conducted most of the interrogation of both the parties and amply protected any property rights of the appellant. Normally, when counsel opens a hearing with a motion to withdraw, the better policy would be to grant the motion and continue the cause unless it is determined that counsel is trifling with the court. However, under the circumstances of this case and in view of the advanced age of the husband, the fact that the matter had been noticed for trial as early as February of 1978 and that the constant change of counsel by the wife had frustrated the efforts to get the matter finally disposed of, we cannot say that the trial judge abused his discretion in going forward with the matter and relieving wife's counsel of his responsibility at the conclusion of the hearing.

*Id.* at 574–75 (footnote omitted).

Here, unlike in *Behar*, the trial court granted the motion to withdraw at the onset of the hearing, leaving Lamaze unrepresented for the hearing. The trial court also conducted most of the examination here, but unlike *Behar*, the trial court did not "amply protect[]" Lamaze's interests. *Id.* at 574. For example, after granting Lamaze's counsel's motion to withdraw, the trial court admitted all of the appellees' exhibits as unopposed even though many of the exhibits contained hearsay. Additionally, unlike *Behar*, no compelling reasons existed here to move quickly. The case was not even at issue, and the writs remained in effect with no hearing set for the motion for rehearing of the order dissolving them. The appellees would not have suffered harm from a continuance.

Also instructive is *Dunker v. Calkins*, 691 So. 2d 1090 (Fla. 3d DCA 1996). In *Dunker*, the plaintiff's counsel moved to withdraw, which the trial court granted after a hearing. *Id.* at 1090. Immediately after, at the same hearing, the trial court heard and granted the defendant's motion to strike the complaint as a sham. *Id.* The Third District reversed, holding that "the trial court should have deferred action on the motion to strike as sham until plaintiffs obtained substitute counsel[,]" and noting that "there

9

were no exigent circumstances which required the motion to strike as sham to be heard immediately." *Id.*

Thus, absent some exigent circumstances, a trial court should not proceed with an adversarial hearing immediately after granting a motion to withdraw. No such circumstances existed here, as the trial court had stayed dissolution of the writs until it could hear the appellees' motion for rehearing. Additionally, although an eleventh-hour withdrawal may be a form of gamesmanship, that does not appear to have been the case here, where a delay could only have resulted in Lamaze's assets remaining frozen for a longer time. Thus, even absent a motion for continuance, the trial court should not have proceeded with the hearing immediately after granting the motion to withdraw.

Moreover, in this case, the Lamaze Defendants, through their withdrawing attorney, *did* request a continuance of the proceedings, as the original motion to withdraw requested a thirty-day continuance and the supplemental motion requested that the original motion be granted. Thus, the trial court was on notice of the request for a continuance. In *Cargile-Schrage*, we wrote:

> "The decision to grant or deny a continuance is within the trial court's discretion and that decision will not be disturbed on appeal absent an abuse of discretion." *Taylor v. Inst. for Med. Weight Loss*, 863 So. 2d 398, 400 (Fla. 4th DCA 2003). In determining whether the trial judge has abused his discretion, a reviewing court should consider "whether the denial of the continuance creates an injustice for the movant; whether the cause of the request for continuance was unforeseeable by the movant and not the result of dilatory practices; and whether the opposing party would suffer any prejudice or inconvenience as a result of a continuance." *Fleming v. Fleming*, 710 So. 2d 601, 603 (Fla. 4th DCA 1998).

908 So. 2d at 529.

Hearing the motion to strike all of the Lamaze Defendant's pleadings without representation placed Lamaze at a substantial disadvantage, as is apparent from the transcript. The appellees relied on affidavits and evidence that should have been objected to as hearsay. Further, as noted in the concurring opinion, other arguments could have, and should have, been made. The court questioned Lamaze itself, sometimes cutting off his responses. The court made its own objections that some of Lamaze's responses were irrelevant or hearsay, and then granted those objections.

In his testimony, Lamaze himself complained that he could not get an attorney.  In sum, Lamaze was not provided a full and fair opportunity to defend the motion to strike, which is tantamount to a denial of due process.

Although Lamaze had lied about his health to reschedule proceedings, he aimed to *move up* the hearings to potentially unfreeze his assets sooner.  Thus, the circumstances do not indicate that a continuance was sought for dilatory purposes.

Lastly, we can perceive no prejudice to appellees if the trial court had granted a continuance.  The pleadings had not closed, and the writs of garnishment and attachment were still in place on the Lamaze Defendants' assets.  Thus, failure to grant a continuance to obtain a new lawyer was an abuse of discretion and proceeding with the hearing on the motion to strike where Lamaze did not have a full and fair opportunity to defend was a denial of due process.

**Conclusion**

The trial court granted the Lamaze Defendants' counsel's motion to withdraw before granting, at the same hearing, a motion to strike all of their pleadings without giving them an opportunity to secure counsel.  For the Corporate Defendants, it prevented them from being heard, because a corporation cannot appear except through authorized counsel.  For Lamaze, an individual defendant, the court abused its discretion in failing to provide him some time to secure representation under the circumstances of this case.  We thus reverse the final default judgment and remand to reinstate the pleadings.  Appellees are not precluded from seeking sanctions again pursuant to its motion to strike.

*Reversed and remanded.*

FORST, J., concurs.
KLINGENSMITH, C.J., concurs specially with opinion.

KLINGENSMITH, C.J., concurring specially.

I agree with the majority opinion reversing this case because of the lack of due process given to appellants.  However, I think it is also important to address the trial court's dismissal of the underlying action on the stated ground that appellants had committed a fraud upon the court.  For the reasons stated below, I would have reversed on this ground as well had the issue been raised in the appellants' briefs.

As detailed in the majority opinion, the trial court found that appellants had fraudulently claimed Eric Lamaze was receiving treatment for brain cancer to delay court proceedings and have writs of garnishment and attachment dissolved. The trial court ultimately granted appellees' motion to strike appellants' pleadings and entered a default judgment against them on appellees' complaint.

Although appellees proved appellants had committed a fraud on the court, this most severe of sanctions is typically reserved for fraud that goes to the heart of the case. In *JVA Enterprises, I, LLC v. Prentice*, 48 So. 3d 109 (Fla. 4th DCA 2010), we described the type of fraud that justifies striking a party's pleadings and entering a default:

> The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense."

*Id.* at 113 (quoting *Arzuman v. Saud*, 843 So. 2d 950, 952 (Fla. 4th DCA 2003)). "When imposing the sanction of dismissal for fraud upon the court, trial courts should weigh the 'policy favoring adjudication on the merits' with the need to 'maintain the integrity of the judicial system.' Trial courts should reserve this sanction 'for instances where the defaulting party's misconduct is correspondingly egregious.'" *Herman v. Intracoastal Cardiology Ctr.*, 121 So. 3d 583, 588 (Fla. 4th DCA 2013) (quoting *Arzuman*, 843 So. 2d at 952).

To justify striking pleadings for fraud on the court, the moving party must show that the fraud was intended to sway the outcome of the litigation in the sanctioned party's favor, such that the court's need to maintain its integrity outweighs the policy that cases should be resolved on their merits. *See Herman*, 121 So. 3d at 588–89 (affirming dismissal of plaintiff's case as a sanction for fraud where plaintiff "gave false testimony that went 'to the very issues presented to the jury in this case'"); *Bryant v. Mezo*, 226 So. 3d 254, 256 (Fla. 4th DCA 2017) (affirming dismissal based on fraud on the court where plaintiff was the victim of a car accident and failed to truthfully disclose injury history, even after being confronted with evidence of prior treatments).

While appellants' conduct was certainly egregious, this fraud resulted only in the rescheduling of the writs hearing and did not even result in the dissolution of those writs, as the trial court had stayed the dissolution until it heard appellees' motion for rehearing. Although the writs may have been necessary to prevent appellants from thwarting the execution of any judgment against them, the writs had no bearing on which party would ultimately obtain a favorable judgment. The factual disputes of the underlying case were unrelated to whether, where, or when Lamaze was undergoing cancer treatments. Thus, while appellants had committed a fraud on the trial court by misrepresenting Lamaze's status as a cancer patient, the fraud did not "interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." *JVA Enters.*, 48 So. 3d at 113 (quoting *Arzuman*, 843 So. 2d at 952). Nor did the fraud cause any delay in resolving the case. In fact, appellees themselves filed an amended complaint in a parallel proceeding and then moved for extensions to respond to appellants' amended counterclaims at the same time appellants were fraudulently attempting to manipulate scheduling the writs proceeding. As such, appellants' fraud did not delay resolution of the underlying case, but only resolution of the writs issue.

Although courts have inherent authority to dismiss actions because of a party's misconduct, that sanction should be undertaken sparingly and with due regard for the public policy of having cases decided on the merits. *See Kozel v. Ostendorf*, 629 So. 2d 817, 818 (Fla. 1993). While sanctions were certainly appropriate in this case, striking the pleadings and entering a default against appellants was too extreme. The conduct at issue was neither one that, if appellants had been successful, would have interfered with the trier of fact's ability to impartially adjudicate the issues between the parties, nor would it have unfairly "hampered" appellees' presentation of their case. *See Laschke v. R.J. Reynolds Tobacco Co.*, 872 So. 2d 344, 346 (Fla. 2d DCA 2004). At most, the fraud caused appellees "to expend time and money as well as suffer a delay in the disposition of the cause." *Pena v. Citizens Prop. Ins. Co.*, 88 So. 3d 965, 967 (Fla. 2d DCA 2012). Therefore, instead of striking the pleadings, the trial court should have considered other appropriate sanctions commensurate to the harm caused to appellees because of the fraud committed upon the court.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

13